CHARLES HENDERSON, claimant-appellant, v. CHARLES F. ILES and HAROLD McKINNEY, known as FILM TRANSPORTATION COMPANY, employer, IOWA MUTUAL INSURANCE COMPANY, insurance carrier, appellees.

No. 49721.

(Reported in 96 N.W.2d 321)

May 5, 1959.

Myles J. Kildee, of Waterloo, for appellant.

Reed, Beers, Beers & Holmes, of Waterloo, for appellees.

GARRETT, J.—Certain phases of this case were before this court in Henderson v. Iles, 248 Iowa 847, 82 N.W.2d 731. Charles Henderson, claimant-appellant, was injured as a result of a truck accident on June 11, 1954. A Memorandum Agreement as to compensation filed by the defendant employer and insurance carrier was approved by the industrial commissioner June 29, 1954. Pursuant to this agreement defendants paid the physician's fees, hospital bills and medical expenses to January 3, 1955, and paid claimant compensation at the rate of $28 per week for 26 weeks. When defendants refused to make further payments, claimant, on March 8, 1955, filed what he called an application for arbitration, apparently proceeding under section 86.14, Code of 1954. A hearing was had before the deputy industrial commissioner on June 23, 1955, in Waterloo, and on July 8, 1955, the deputy industrial commissioner filed what he denominated a "Review Reopening Decision" in which he held claimant " 'disabled to the extent of 17½% of the body as a whole', and granted compensation for a total of 107½ weeks less the 26 weeks previously paid him." Certain additional medical and hospital bills were ordered paid by the defendants.

Claimant, being dissatisfied with the decision of the deputy commissioner, on July 15, 1955, filed with the commissioner a Petition for Review under section 86.24, Code of 1954. The commissioner on October 1 issued an opinion stating that he had no authority to reconsider the matter. On November 4, 1955, claimant appealed to the district court of Howard County which held the commissioner erred in not reviewing the decision of his deputy and that the action of the claimant under section 86.14 was proper, and further held the evidence disclosed claimant's permanent total disability and granted relief accordingly. The defendants appealed to this court which reversed the lower court and held the action taken by the claimant was a Reopening and Review under section 86.34; that the hearing by the deputy commissioner, acting for the commissioner, was appealable to the district court and not reviewable by the commissioner; that

since no appeal was taken within thirty days from the deputy's decision, his findings and decision were final and the district court had no jurisdiction to consider the appeal; and that the holding of the deputy commissioner on the extent of disability was a determination of fact based upon substantial evidence and therefore not subject to alteration by the judgment of the district court. See Stice v. Consolidated Indiana Coal Co., 228 Iowa 1031, 291 N.W. 452; Sauter v. Cedar Rapids & Iowa City Ry., 204 Iowa 394, 214 N.W. 707.

On May 10, 1957, claimant filed his petition for review stating in substance that the duration of his disability was not 107½ weeks as originally believed and contemplated when the July 8, 1955, award was filed, but was, as subsequent developments have proved, a permanent and total disability so far as earning capacity was concerned.

On November 7, 1957, a review hearing, referred to in the record as a review-reopening, was held before the commissioner, the evidence offered being in substance as follows: Claimant testified:

"Since the first hearing on June 23, 1955, I have had a bad back and shoulder just the same as it was from the start. * * * In 1957, I mowed weeds for the city and worked one week at the Cattle Congress. I have had no steady employment since the date of the accident; * * * When I worked at the Cattle Congress and mowed weeds, my back and shoulders bothered me practically all the time; I mean just off and on, if I make a wrong move, then I get it. I can't lift anything; can't get my arm up above my head; if I get down on the floor, I can't get up without getting hold of something. I get in such shape, I can't get back up again. No, I couldn't lift them films; I couldn't begin to drive the delivery truck and do the work the company had me doing before the accident. * * * My trouble is the same as it was at the time of the last hearing, my back and my shoulders. Ever since the accident, it has bothered me about the same all the time. I can't say it is worse now than it was at the time of the accident or at the time of the last hearing. Yes, I still drive my car. A year ago this summer, I worked as a flagman on a street gang; it lasted 10 days.

* * * My condition is no different than it has been for the last two or three years."

Dr. Cornelius P. Addison stated he treated claimant for the injuries received in the accident and thereafter until he was released. His examination of claimant on June 1, 1957, disclosed claimant's right shoulder was limited in its movement in any direction "* * * such that it is impossible for Mr. Henderson to raise his arm from the side. * * * This condition classifies, in my opinion, as a 'frozen shoulder', which is a crippling, disabling condition of permanent nature." He further stated the upper portion of the back presented stiffness, rigidity, tenderness to palpation and inability to flex the upper back— "In my opinion, he is unable to perform physical labor to provide a livelihood." On cross-examination he testified: "Yes, I have seen Mr. Henderson infrequently since June 23, 1955. * * * That is correct, his difficulties have continued to be the same all along. No change for the worse at the present time than there was before; about the same." On redirect: "I have advised Mr. Henderson to participate in no work involving physical exertion. * * * Carpenter work should be very hazardous for a man with his disability. I would say that he would be unable to grasp anything securely enough to prevent falling. In my opinion, he would be unable to do the ordinary lifting in connection with carpenter work, or most any physical labor." He testified claimant had no training or background qualifying him to do other than manual labor to earn a living.

Dr. John R. Walker testified he treated claimant from November 1954 until June 1957 and that he presents a rigid picture of the upper extremity, "he could not get his arm up alongside his head. * * * Yes, the man, in my opinion, is capable of doing something for a short sustained period. His problem seems to be one of not being able to sustain effort, in other words, an effort over a long enough period of time, or with certain activities * * *, so therefore, he is unable to actually do anything but a little part-time work. * * * he cannot carry on satisfactory employment over a sustained period of time required by a job. Yes, I testified at the prior hearing that his permanent disability of the shoulder is 10%; his condition at the present time is about the same."

Claimant's wife testified he always had employment until the accident.

Dr. Bernard Diamond stated he examined claimant in 1955 and that his findings at the October 23, 1957, examination were about the same as they were on the prior occasion, "On examination he looked very fit; this, I think, is important in this case. His muscular development is good and he is not flabby. * * * Now the arms, legs and shoulders all in good motion. There was no spasm of the muscles, no grating of the shoulders. * * * I would give him a total of 20% disability. Well, I would take 10% for his shoulder and 10% for his low back. It is, yes, the same percentage of permanent disability I gave him at the last hearing. No, there has been no increased disability. * * * I believe this man could be working. * * * That's right, when you talk about the body as a whole, you mean function—the ability of the whole body to function."

On February 6, 1958, the commissioner filed his decision stating "the claimant himself states his present condition is no different than it was right after the accident—no different than it has been in the last two or three years. Both of his doctors also state that the condition is the same as when they examined him before the last hearing. Surely such evidence does not show a change in claimant's condition since the award. * * * the application under section 86.34 is denied."

On appeal, the district court held "that claimant has failed to prove by additional evidence that the condition of the claimant would warrant increasing the award made in July, 1955;" and claimant's appeal was denied.

I. When this case was before us in Henderson v. Iles, supra, we said at page 857 of 248 Iowa, page 737 of 82 N.W.2d:

"It may be that subsequent developments will justify a further reopening by the commissioner under section 86.34, but the determination by the district court must be reversed and, for the present at least, the findings and award of the commissioner must be re-established and sustained."

A few days after the filing of our opinion the claimant apparently believing himself totally permanently disabled petitioned the commissioner for a Reopening and Review of his case. He appears to take the position that the commissioner

and district court based their decisions upon their findings as to functional disability rather than upon loss or impairment of earning capacity and that in so doing they committed error which should be corrected by this court.

It is definitely the rule in this state that the test is industrial disability, carrying with it loss or reduction of earning capacity, and not mere functional disability, which is important. Dailey v. Pooley Lbr. Co., 233 Iowa 758, 765, 10 N.W.2d 569; Oldham v. Scofield & Welch, 222 Iowa 764, 768, 266 N.W. 480, 269 N.W. 925; Diederich v. Tri-City R. Co., 219 Iowa 587, 258 N.W. 899; Moses v. National Union Coal Mining Co., 194 Iowa 819, 824, 825, 184 N.W. 746.

"It is to be remembered that, while functional disability is to be taken into consideration, the basis for allowance of compensation (except where specifically provided) is the question of industrial disability, or, in other words, the reduction of earning capacity." Oldham v. Scofield & Welch, supra, at page 768 of 222 Iowa, page 482 of 266 N.W.

II. Where application is made for review under section 86.34 the applicant has the burden of showing the additional consequences, facts and circumstances on which he bases his application and that they resulted proximately from the original accident. Oldham v. Scofield & Welch, supra. This section provides that the employer or employee may, at any time within three years from the date of the last payment of compensation made under an award or agreement, request a review by the commissioner "and if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded or agreed upon."

In Stice v. Consolidated Indiana Coal Co., 228 Iowa 1031, 1038, 1041, 291 N.W. 452, 456, we said regarding this section: "It merely provides that 'if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded or agreed upon.' It seems to us that this language is subject to but one interpretation, namely, that the decision on review depends upon the condition of the employee, which

is found to exist subsequent to the date of the award being reviewed."

The question is, then, did claimant, by sufficient competent evidence, show a change since the award was made, in his capacity to perform gainful labor? Was there a change in the degree of his industrial disability—a reduction of earning capacity?

The commissioner held against the claimant and the judgment of the district court affirming the commissioner must be sustained.

III. This court is committed to the view that where the facts are in dispute and where reasonable minds may differ as to the inferences to be drawn from the proven and established facts and circumstances, the findings and decision of the commissioner based thereon are conclusive and the court is bound thereby. Henderson v. Iles, supra, and cases cited.

The commissioner could well find there was a conflict in the testimony, that the material facts, particularly with reference to the industrial disability of claimant, were in dispute and that reasonable minds might differ as to the inferences to be drawn from the proven facts. In such situation it was his duty to decide the issues of fact and his decision based thereon cannot be disturbed by the court.—Affirmed.

All JUSTICES concur except THORNTON, J., who takes no part.