George ARMSTRONG, Appellant,

v.

STATE OF IOWA BUILDINGS AND GROUNDS and State of Iowa, Appellees.

No. 85–345.

Supreme Court of Iowa.

Feb. 19, 1986.

Dennis L. Hanssen, of Hopkins & Huebner, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and James M. Peters, Asst. Atty. Gen., for appellees.

SCHULTZ, Justice.

The dispute in this workers' compensation appeal relates to the amount of permanent disability the worker sustained. The industrial commissioner's representative (commissioner) awarded the worker a 10 percent permanent partial disability; however, on judicial review the district court raised the amount to 50 percent. On appeal the worker claims the district court erred in not recognizing total permanent disability, while the employer maintains the district court erroneously modified the commissioner's award. We conclude there is substantial evidence in the record to support the commissioner's decision.

The worker, George Armstrong, was employed by the State of Iowa Buildings and Grounds (employer) as a custodian on January 31, 1977. His duties required that he perform a substantial amount of physical labor. On July 26, 1978, the worker suffered abdominal pains while lifting a bucket of water in the course of his employment. Thereafter, on August 7, 1978, the worker had surgery performed to repair bilateral inguinal hernias. He was released to return to work on October 9, 1978, and did so, working for two days. The worker testified that upon returning to work he was ordered to lift some chairs and he refused, telling his supervisor that he could not bend over. He left work on October 10 and did not return.

Sometime after leaving his employment the worker was examined by his treating physician. Thereafter, he was examined, in turn, by another physician, an internist, an orthopedic surgeon, a urologist, a general surgeon, a psychologist and a psychiatrist. He was also treated at a local hospital and the Veteran's Administration Hospital. The results of all these examinations were essentially negative as to any job-related physical injury, but there were some indications of a possible job-related mental injury.

During the course of these examinations the worker complained of pressure over his hernia operation incision, leg pains, inability to bend or lift, and inability to work. On October 24, 1978, the treating physician and surgeon reexamined the worker and found no reoccurrence of the hernias. Some eleven months later, a urologist discovered a cancerous tumor on the worker's bladder that he promptly had removed. The worker was released with no urological disability. Still complaining of pain in his lower extremities, the worker was examined by Todd Hines, Ph.D., a psychologist, on February 29, March 5 and March 10, 1980. Following psychological testing, Dr. Hines surmised that psychological factors likely constituted a major source of the worker's symptom production and exacerbation. He believed that a somatic conversion process had created the worker's present chronic pain and symptoms. Dr. Hines concluded that the worker was "completely disabled as a function of the interaction of physiological and psychological factors precipitated by the July 26, 1978, accident."

In May of 1980 the worker was examined at the psychiatric clinic of the University of Iowa Hospitals and Clinics by Remi Jere Cadoret, M.D., a professor of psychiatry at the University. A family practice resident assisted Dr. Cadoret in this evaluation. Dr. Cadoret defined traumatic stress disorder as a development of symptoms following a psychologically traumatic event that is generally outside the range of usual human experience. He opined there was no traumatic neurosis present in the worker's case because the triggering event was not of significant trauma. Dr. Cadoret found that the worker suffered from some psychological problems that were consistent with alcoholism. However, he indicated that the worker's alcoholism was not caused by his work-related injury. Dr. Cadoret believed that although some of the worker's complaints could be due to his work-related injury, much of his pain and reaction to it was related to the worker's bladder cancer and concern about the cancer spreading. Dr. Cadoret stated that it was impossible to answer the question of whether the worker suffered any functional impairment from his work injury. Dr.

Cadoret generally disagreed with Dr. Hines' diagnosis of somatic conversion and concluded that the worker was suffering from a low level anxiety.

The worker first applied for workers' compensation benefits and filed a report of injury on August 31, 1978. He was paid weekly compensation arising from the events concerning the hernia surgery. On October 17, 1979, the worker then sought a review-reopening hearing, claiming that he was totally disabled. The hearing was held before a deputy industrial commissioner who determined that the worker sustained a 10 percent permanent partial disability because of a mental condition which arose out of his job-related injury on July 26, 1978. On July 15, 1981, in an appeal within the agency, the commissioner affirmed this determination. The commissioner detailed some seventeen findings of fact before concluding that the worker's mental condition entitled him to a 10 percent permanent partial industrial disability.

Thereafter, the worker filed a petition for judicial review and the district court remanded for further findings and conclusions regarding the extent of the worker's permanent disability. The reviewing court indicated that the agency's reliance on Dr. Cadoret's evaluation of a low level anxiety, standing alone, was insufficient to support such a minimal disability finding and that criteria set out in *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980), for evaluating industrial disability needed to be considered. On remand, the commissioner indicated that his affirmance of the deputy industrial commissioner's award "was thought to be a liberal allowance, giving due significance to that deputy's first-hand hearing of the case." The commissioner then evaluated Dr. Cadoret's testimony in more detail and noted there was no exacting formula that is applied for assessing industrial disability. The commissioner concluded that his original rating of 10 percent permanent partial disability was correct.

On further judicial review the district court again remanded; however, in its deci-sion the court acknowledged that it was within the commissioner's prerogative to rely upon Dr. Cadoret's testimony. The court requested the commissioner further evaluate the industrial disability award and specifically requested that the commissioner examine the factors set out in *McSpadden* in more detail. Moreover, the court noted that the effect of the worker's inability to engage in other employment and whether the employer refused to provide him work had not been scrutinized.

In its second remand decision the commissioner examined the worker's age, education and history of being able to find numerous jobs before concluding that the impairment was not great and should not have materially diminished the worker's ability to secure employment. Additionally, the commissioner reviewed the evidence regarding the employer's refusal to provide any work and the worker's effort to seek other employment. The commissioner concluded "[t]here may have been a refusal to re-employ claimant in his former capacity (which he claims he could not do anyway), but the evidence does not show a refusal to provide other forms of work." Concerning his effort to seek other work, the commissioner noted "[t]his question is somewhat tied to the first one, the one concerning claimant's ability to work. With strict respect to his looking for other work, the record seems void of any such evidence." The commissioner reviewed the matters brought out in cross-examination of the worker at the reopening hearing and concluded that the evidence "does not show any effort on the part of the worker to find other work."

In its ruling on the worker's third petition for judicial review, the basis for the present appeal, the district court determined there was insufficient evidence in the record to support the commissioner's findings concerning the worker's inability to work. The court also concluded that there was not substantial evidence to support the commissioner's conclusion that the worker had a "low level anxiety" which did not produce an industrial disability beyond

10 percent. The court went on to make its own fact-finding and determined that the worker had a 50 percent permanent partial disability. It remanded the case to the agency for the limited purpose of computation and payment of benefits.

Each party is dissatisfied with this judicial review decision. The worker maintains the court should have ruled that he had a total permanent disability because he claims that such disability was established, as a matter of law, at the review-reopening hearing. The employer insists that the court erred when it decided that the 10 percent rating was not supported by substantial evidence. Moreover, the employer contends that even if the trial court correctly decided that the 10 percent award was not supported by substantial evidence, the court should have remanded the case to the agency instead of modifying the commissioner's disability rating.

Judicial review of a decision made by the industrial commissioner is granted by statute in accordance with the terms of chapter 17A, the Iowa Administrative Procedure Act. Iowa Code § 86.26. Pursuant to section 17A.19 the district court has authority to review the commissioner's ruling. In exercising this power, the district court acts in an appellate capacity to review the agency action and correct errors of law. *Northwestern Bell Telephone Co. v. Iowa State Commerce Commission*, 359 N.W.2d 491, 495 (Iowa 1984).

■ The district court may affirm the agency action or may remand to the agency for further proceedings. § 17A.19(8).[1] A ground for remand arises when the court determines that the agency action is unsupported by substantial evidence in the record made before the agency. § 17A.19(8)(f). When the commissioner fails to weigh and consider all the evidence and thus errs, the district court should return the case to the

commissioner for a decision on the record already made rather than to find the facts. *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908–09 (Iowa 1976). A remand is for the purpose of allowing the agency to re-evaluate the evidence. However, a remand for agency fact-finding is unnecessary when the facts are established as a matter of law. The reviewing court can determine the facts as a matter of law when the relevant evidence is both uncontradicted and reasonable minds could not draw different inferences from the evidence. *McSpadden*, 288 N.W.2d at 186.

■ Initially, we agree with the employer that this is not a case in which the district court could determine the facts as a matter of law and modify the commissioner's award. In this case the relevant evidence was both contradicted and such that reasonable minds could draw different inferences from the evidence. Next, we review the record to determine whether there was substantial evidence to support the commissioner's findings.

We recently summarized principles applicable to our judicial review of a decision by the commissioner as follows:

A review of the industrial commissioner's decision is governed by Iowa Code section 17A.19.... The scope of review is not de novo.... The commissioner's findings have the effect of a jury verdict.... Those findings are applied broadly and liberally to uphold rather than defeat the commissioner's decision; they are binding on appeal unless a contrary result is demanded as a matter of law.... The above rules are applicable in the district court review. We review the district court's appeal decision for errors of law. In this pursuit we reapply the section 17A.19(8) standards to the agency action to determine whether our

---

1. Subsection (8) provides in part:
   The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory re-

lief, if substantial rights of the petitioner have been prejudiced because the agency action is:
   ....
   *f.* In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole;
   ....

conclusions are the same as those of the district court.

*Doerfer Division of CCA v. Nicol,* 359 N.W.2d 428, 432 (Iowa 1984) (citations omitted). The question on judicial review is not whether the evidence might support a *different* finding but whether evidence supports findings the commissioner actually made. *Ward v. Iowa Department of Transportation,* 304 N.W.2d 236, 237–38 (Iowa 1981). The substantial evidence test is applied to the entire record; evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 295–96 (Iowa 1982).

■ At issue in this case is the matter of disability. It is clear that the term "disability" is meant to include "industrial disability" or loss of earning capacity and not mere "functional disability," and that it is to be computed in terms of percentage of the total physical and mental ability of a normal worker. *Diederich v. Tri-City Railroad Co.,* 219 Iowa 587, 593, 258 N.W. 899, 902 (1935). Disability is determined by considering the claimant's age, education, qualifications, experience, and inability, due to injury, to engage in suitable employment. *McSpadden,* 288 N.W.2d at 192.

We first address the commissioner's findings concerning the worker's ability to be employed after the injury. The worker has the burden of proof to establish, among other things, the extent of his disability. *See Beier Glass Co. v. Brundridge,* 329 N.W.2d 280, 286 (Iowa 1983). Consequently, the worker must prove that his job-related injury made him unable to obtain suitable employment and that he indeed made an effort to seek employment. Included in this would be whether the employer had refused to provide him work that he was capable of performing. *See McSpadden,* 288 N.W.2d at 192.

■ The evidence in the record as to these matters is sparse; most of it is supplied by the worker's testimony at his review-reopening hearing. In the past the worker had always shown an ability to obtain employment, but at the hearing he claimed that he no longer had the ability to engage in any gainful employment. It appears from the record that the commissioner gave little credence to the worker's testimony that he had tried, but was unable, to perform any work activity. The commissioner indicated that other matters, such as the worker's fear that his body was inundated with cancer, had to be considered along with his work-connected low level anxiety in determining the worker's inability to engage in other employment. Additionally, the commissioner pointed out that the evidence did not show that the employer refused to provide the worker other types of work. In light of the evidence in the record, there was substantial evidence to support the commissioner's findings. Where there is a conflict in evidence or reasonable minds might disagree about inferences to be drawn from the evidence, the reviewing court is not free to interfere with the commissioner's findings. *Ward,* 304 N.W.2d at 239.

■ The most disputed finding made by the commissioner was his determination that claimant had a low level anxiety, which in relation to his age, education and experience, did not produce permanent partial disability beyond 10 percent. The worker urges that the commissioner did not consider Dr. Hines' testimony regarding somatic conversion and only considered those parts of Dr. Cadoret's testimony that were beneficial to its decision. Additionally, the worker asserts that Dr. Cadoret never set a percentage of disability that was job-related.

It is the duty of the commissioner to state the evidence relied upon and to detail reasons for his conclusion. *Catalfo v. Firestone Tire and Rubber Co.,* 213 N.W.2d 506, 510 (Iowa 1973). In its second remand decision, the commissioner carefully examined Dr. Cadoret's entire testimony and how it supported the finding of 10 percent permanent partial disability. Dr. Cadoret found that the worker had a problem with alcoholism which was not job-related. He believed that although some of

the worker's pain may be related to his hernia surgery, much of his pain and reaction to it was traceable to his bladder cancer and concern about it spreading. Dr. Cadoret indicated that it was impossible to evaluate the functional impairment, or even if it was permanent or temporary. The most that Dr. Cadoret would attribute to being job-related was a low level of anxiety; however, he noted that some of this anxiety could be attributed to the worker's concern about his bladder cancer. It was the commissioner's duty to evaluate all the testimony, determine its credibility, and ascertain whether the worker met his burden of establishing industrial disability, and if so, the degree. We believe there is substantial evidence in the record to support the commissioner's conclusion of a 10 percent permanent partial disability in this case.

▊ In his reply brief the worker raises a new issue regarding the "odd-lot doctrine," which we formally adopted in *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 105 (Iowa 1985). In *Guyton* we held that a worker becomes an odd-lot employee when an injury makes the worker incapable of obtaining employment in any well-known branch of the labor market. *Id.* If the worker falls within this category, the burden to produce evidence of suitable employment then shifts to the employer. *Id.* at 106. The worker insists that when the "odd-lot doctrine" is applied to the facts of

this case, he has clearly established a prima facie case that he is totally disabled. This argument, however, was not raised at the administrative hearing or on judicial review before the district court. Contentions not raised at the hearing may not be argued before us for the first time. *Buchholtz v. Iowa Department of Public Instruction*, 315 N.W.2d 789, 794 (Iowa 1982). Additionally, we have considered all other issues advanced in this appeal, whether specifically addressed in the opinion or not, and find them to be without merit.

In summary, we hold that the district court erred in two respects. On judicial review, the district court should not have engaged in its own fact-finding to increase the worker's disability award. Secondly, the district court should have determined there was substantial evidence in the record to support affirming the commissioner's decision.

AFFIRMED ON THE APPEAL; REVERSED ON THE CROSS–APPEAL.

All justices concur except LAVORATO, J., who takes no part.