Helen KLEIN, Appellant,

v.

FURNAS ELECTRIC COMPANY and
American Mutual Liability Insurance
Company, Appellees.

No. 85–303.

Supreme Court of Iowa.

March 19, 1986.

As Amended on Denial of Rehearing
April 14, 1986.

R. Ronald Pogge, of Hopkins & Huebner, P.C., Des Moines, for appellant.

Edward Ronwin, Urbandale, and Michael B. Devine, of Bump & Haesemeyer, P.C., West Des Moines, for appellees.

CARTER, Justice.

On this appeal, petitioner, Helen Klein, raises several issues concerning the industrial commissioner's award of workers' compensation benefits for work-related injuries. She contends that the commissioner, at the latest administrative hearing, should have placed the burden upon her employer to show a change of condition subsequent to the findings of disability made at an earlier hearing. She also contends that, in any event, the record fails to support the percentage of industrial disability finally determined to exist by the industrial commissioner, and requires the determination of a greater disability as a matter of law. She further challenges the failure of the industrial commissioner to order her employer to pay interest and penalties for delay in paying medical expenses allowed by the commissioner at an earlier hearing.

The district court denied each of these claims. We conclude that the district court was correct in affirming the determination of the industrial commissioner.

Petitioner, born October 23, 1933, was employed by respondent Furnas Electric Company on September 12, 1977, as an assembly worker performing light labor in the manufacture of electrical switches. On that date, she sustained an injury to her right elbow while on the job. This occurred when her arm struck a moving object near the assembly line. A first report of injury was filed on September 14, 1977. Her condition was first diagnosed as tendinitis and later as lateral epicondylitis. She was not released to return to work until January of 1978. She began receiving weekly workers' compensation benefits of $96.57 on October 3, 1977, pursuant to a memorandum of agreement.

Upon her return to work in January of 1978, petitioner was still experiencing pain in the right upper arm and shoulder. In addition, she soon began to notice pain and loss of motion in her left upper arm from the cumulative effects of using an air gun. The latter condition was diagnosed by her physician as carpal tunnel syndrome and required surgery on the left arm in May of 1978.

On February 29, 1980, petitioner filed with the industrial commissioner a combined request for review-reopening of the memorandum of agreement involving the September 12, 1977 injury, and an arbitration petition for determination of compensability to the left upper extremity caused by working with the air gun. She also noted in her request for hearing that she was experiencing work-related emotional disturbance.

On September 2, 1980, a hearing was held before a deputy industrial commissioner at which petitioner, respondent-employer, and respondent-insurance carrier agreed that the two work-related injuries were compensable and requested a determination of the extent of petitioner's permanent

disability of the body as a whole and liability of respondent for her medical expenses.

The record at the hearing established that petitioner had not worked since February of 1978. Included were the medical reports of Dr. David B. McClain, claimant's treating physician, the testimony of Dr. Thomas Summers, a neurologist, and Todd Hines, Ph.D., a clinical psychologist. Dr. McClain's medical report dated December 12, 1979, indicated that, in his opinion, petitioner was unable to return to her previous occupation or to any work involving manual labor or the repetitive use of her hands. He determined her functional disability to be twenty-seven percent permanent partial disability of the upper right extremity and twenty-seven percent permanent partial impairment of the upper left extremity. He found that this circumstance coupled with her state of emotional instability at that time rendered her totally disabled on an industrial basis. Dr. McClain expressed the opinion that professional counseling would be of some benefit in correcting this situation.

Dr. Summers indicated that, as a result of her work-related injuries, petitioner had suffered a functional impairment of ten to fifteen percent of the body as a whole and was unable to return to any occupation involving repetitive work of the hands. Dr. Hines testified that, due to job-related depression, claimant was, at the time of the September, 1980 hearing, unable to work. In his opinion, that situation would be permanent in the absence of further treatment. With the benefit of a program of rehabilitation, however, Dr. Hines believed that petitioner showed "good vocational potential."

As a result of the evidence presented at the September 2, 1980 hearing, a deputy industrial commissioner, on December 31, 1980, concluded that "[a]t this point a determination of the extent of claimant's permanent disability would be premature. [C]laimant has not [yet] recuperated from her work-related injuries as contemplated in section 85.34(1)." As a result of these conclusions, the deputy industrial commissioner ordered respondents to pay claimant a running healing period award under section 85.34(1) until such time as she returned to work or it became medically indicated that no further improvement of her condition was anticipated. The deputy commissioner's order also provided that the respondents pay to petitioner certain designated medical expenses and mileage incurred for medical treatment. The medical expenses to be paid totaled $3041.19 and the mileage reimbursement totaled $454.68. No administrative or judicial review was sought with respect to the deputy's December 31, 1980 decision.

On March 16, 1983, respondents filed an application to discontinue paying healing period benefits to petitioner because no further significant improvement from her injuries could be anticipated. A hearing was held in March of 1983, and evidence was received from petitioner, Dr. McClain, Dr. Summers, Dr. Hines, Dr. Peter Wirtz, an orthopedic surgeon, and Dr. Michael Taylor, a psychiatrist. Dr. Hines testified that, since the time of the previous hearing, petitioner had made some progress toward reducing the symptoms of her depression but had prematurely terminated treatment and consequently lost any ground which had been gained. He believed that petitioner was experiencing an intractible anxiety and depression triggered by the physical injuries sustained on the job. He expressed the opinion that she was 100 percent permanently industrially disabled. In contrast, Dr. Taylor testified for respondents that petitioner had no diagnosable mental disorder and no disability attributable to a psychological cause.

Dr. McClain testified that petitioner's complaints of pain in both upper extremities, as well as the cervical spine, continued. He diagnosed her condition as a probable bilateral carpal tunnel syndrome. He found her functional impairment to be unchanged from the time of the prior hearing and continued to believe that claimant was 100 percent totally industrially disabled. Dr. Wirtz, however, testified for respondents that, in his opinion, petitioner did not

have a permanent disability from orthopedic causes. Dr. Summers indicated that petitioner's problem was disabling pain from epicondylitis of the right humerus and that further employability would be dependent upon alleviation of that symptom. A pain management specialist testified that an outpatient treatment program might successfully decrease petitioner's level of pain and suffering but was unable to say whether reduction of that symptom would assure her employability.

In reconciling the expert testimony, at the March, 1983 hearing, the deputy industrial commissioner found that maximum recuperation on petitioner's part had been attained by March 16, 1983, and terminated the weekly healing benefits as of that date. It was found that the extent of claimant's permanent industrial disability was sixty percent, a condition which entitled her to 300 weeks of disability payments reduced by benefits paid for permanent partial disability.[1] It was further determined that the medical expenses awarded in the December 31, 1980 order were still due and owing to petitioner from respondents, that respondents were precluded from relitigating the validity of that award, but that no interest or penalty would be assessed as a result of the late payment thereof. The decision of the deputy was affirmed by the industrial commissioner. The final agency action was affirmed by the district court on judicial review.

I. *Whether Industrial Commissioner Incorrectly Determined Extent of Petitioner's Permanent Disability.*

Petitioner makes two arguments on appeal concerning the determination by the industrial commissioner of the extent of her permanent total disability. Her first argument asserts that, as a result of the findings which were made by the deputy industrial commissioner following the September, 1977 hearing, the extent of her permanent total disability was established

at 100 percent. That circumstance, she urges, placed the burden of proof on respondents at the subsequent hearing to establish the extent to which her condition had changed since the time of the deputy commissioner's findings on December 31, 1980. She therefore asserts that the commissioner erred in placing the burden on her to reestablish the extent of her disability at the March, 1983 hearing. In the alternative, petitioner urges that, regardless of the burden of proof, the evidence establishes that she is 100 percent permanently totally disabled as a matter of law.

A. *Burden of proof on March, 1983 hearing.* Petitioner asserts that the same rules of law should have been applied at the March, 1983 hearing which ordinarily apply in a review reopening proceeding subsequent to the commissioner's final determination of industrial disability. She relies on cases such as *Blacksmith v. All-American, Inc.,* 290 N.W.2d 348 (Iowa 1980) and *Henderson v. Iles,* 250 Iowa 787, 96 N.W.2d 321 (1959) for the proposition that, with respect to a hearing which occurs after an award by the commissioner or an agreement approved by the commissioner, the issue is sharply restricted to whether a change in the claimant's condition has occurred since the time of the prior decision.

We believe that petitioner's contentions in this regard must be rejected in view of the very tentative nature of the determinations made following the September, 1977 hearing. The deputy commissioner at that time expressly stated in the written order commencing the healing period benefits that "a determination of the extent of claimant's permanent disability would be premature." Indeed, it is only because such a conclusion was reached that a running healing period award under section 85.34(1) could appropriately have been entered. The determinations made in the December 31, 1980 order lacked the finality

---

**1.** Respondents' liability for permanent total weekly compensation benefits is affected by order of the commissioner granting petitioner's unresisted application to commute a portion of

her permanent partial disability benefits to a lump sum award. This was the equivalent of 125 weeks.

of the prior proceedings which were deemed to have been a bench mark as to claimants' condition in *Blacksmith* and *Henderson*.

■ The record also fails to support petitioner's claims as to the particularity of the findings of the deputy on December 31, 1980. She asserts that the deputy found at that time that she was experiencing a total industrial disability based upon both physical and psychological impairments acquired as a result of her employment. A careful reading of those portions of the deputy's order upon which petitioner relies to support these contentions indicates that the deputy commissioner is only summarizing testimony given at the September, 1977 hearing and is not adopting any particular portions of that testimony as the findings of the commissioner. The commissioner and the district court properly concluded that the burden of establishing the extent of her disability remained upon the petitioner at the March, 1983 hearing. *See Armstrong v. State of Iowa Buildings and Grounds*, 382 N.W.2d 161, 167 (Iowa 1986); *Bodish v. Fischer, Inc.*, 257 Iowa 516, 519, 133 N.W.2d 867, 868–69 (1965); *Burt v. John Deere Waterloo Tractor Works*, 247 Iowa 691, 696, 73 N.W.2d 732, 737 (1955).

B. *Evidentiary support for findings of the commissioner.*

As an alternative to the foregoing argument, petitioner asserts that the industrial commissioner's final determination of the extent of her permanent industrial disability is not supported by substantial evidence in the record before the agency, when that record is considered as a whole. This argument is predicated upon her claim that the evidence presented compels, as a matter of law, a finding that she has sustained a 100 percent permanent total disability.

■ In order to disturb the findings of the industrial commissioner with respect to the extent of her industrial disability, petitioner must establish that the evidence required a different finding as a matter of law. *Armstrong*, 382 N.W.2d at 166; *Schreckengast v. Hammermills, Inc.*, 369

N.W.2d 809, 810–11 (Iowa 1985); *Ward v. Iowa Department of Transportation*, 304 N.W.2d 236, 239 (Iowa 1981); *Wetzel v. Wilson*, 276 N.W.2d 410, 412 (Iowa 1979). Because industrial disability measures the loss of earning capacity rather than mere physical or mental impairment, *Olson v. Goodyear Service Stores*, 255 Iowa 1112, 1121, 125 N.W.2d 251, 257 (1963), it was necessary for the commissioner to consider petitioner's functional impairment, age, education, work experience, and adaptability to retraining, to the extent that any of these factors affect her prospects for relocation in the job market. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 184 (Iowa 1980). It is the commissioner's duty to evaluate all the testimony bearing on these elements, determine its credibility, and then determine the degree of industrial disability. *Armstrong*, 382 N.W.2d at 167.

In the present case, the commissioner was presented with conflicting evidence concerning the extent of the claimed physical and psychological impairment and whether it was job-related. The commissioner found, as was permissible under the evidence, that there was no psychological impairment attributable to petitioner's employment. His remaining task was to assess the effect of her job-related physical impairment, *i.e.*, the pain and limited motion which she experienced in her upper arms and shoulders, upon her future earning capacity.

When the industrial commissioner is faced with a situation where a particular claimant is unable to return to work in the same or a similar employment setting as a result of industrial injury, it becomes necessary to predict the likelihood of job relocation. In some cases, this may be impossible to do with precise accuracy. In the present case, there was evidence from which the commissioner could have determined that, with proper rehabilitative therapy, petitioner could be reemployed, albeit with lesser earning potential, in some other occupation compatible with the degree of permanent functional impairment incurred during her former employment. There was also some evidence that the reason this had

not yet occurred may have been partly due to petitioner's action in prematurely terminating the therapy recommended by her clinical psychologist. Although the determination was difficult to make, we cannot say that the commissioner's assessment of sixty percent permanent industrial disability was not a permissible finding in lieu of the 100 percent figure for which petitioner was asking. We conclude that this outcome determinative finding is supported by substantial evidence, and the district court did not err in failing to disturb the commissioner's decision. *Schreckengast,* 369 N.W.2d at 810–11.

■ C. *Petitioner's reliance on "odd-lot doctrine."* Petitioner also raises on appeal the question of whether or not the record reflects that she is an odd-lot employee for purposes of determining her probable success in the labor market. The "odd-lot doctrine," which we approved in *Guyton v. Irving Jensen Co.,* 373 N.W.2d 101, 105 (Iowa 1985), is a procedural device designed to shift the burden of proof with respect to employability to the employer in certain factual situations. We need not determine on the present record whether petitioner's situation fits within the odd-lot doctrine. As we indicated in *Armstrong,* 382 N.W.2d at 167, claims concerning the applicability of this doctrine must be raised before the industrial commissioner or they will not be considered on judicial review. Petitioner has failed to demonstrate that such claim was made at the agency level.

II. *Whether Petitioner is Entitled to Recover Interest or Penalties for Respondent's Delay in Payment of Medical Benefits Awarded in December 31, 1981 Order.*

■ The final issue for our determination is whether the commissioner and district court erred in failing to provide for payment of interest and penalties by respondents as a result of their delay in paying $3007.19 in medical expenses required under the deputy's order of December 31, 1980. The record indicates that this payment was not tendered to petitioner until July of 1983. Petitioner's assertion that she was entitled to interest and penalty for this delay in payment is based on section 86.13 and section 85.30. Our reading of these statutes suggests that both of these statutes are applicable by their express terms to weekly compensation payments for industrial disability and do not support the allowance of interest or penalties for late payment of medical expenses allowed under section 85.27. Nor does section 535.2 empower the commissioner to add interest onto the award of medical expenses.

■ Petitioner's remedy, if any, in regard to enforcing the December 31, 1980 order after the time for appeal had passed was by certification to the district court under section 86.42. The industrial commissioner had no further obligation in regard to its enforcement, and his decision not to become involved was correct. Accordingly, a judicial review proceeding under chapter 17A provides petitioner no vehicle for litigating the issues of entitlement to interest on amounts due under the commissioner's order. We have considered all issues presented and find no basis upon which to disturb the orders of the district court or industrial commissioner.

AFFIRMED.

All justices concur except REYNOLDSON, C.J. and LAVORATO, J., who take no part.