**IN THE COURT OF APPEALS OF IOWA**

No. 13-1886
Filed February 11, 2015

**ROBIN LULL-GUMBUSKY,**
        Petitioner-Appellant/Cross-Appellee,

**vs.**

**GREAT PLAINS COMMUNICATION, a/k/a
GREAT PLAINS LOCATING SERVICES, INC.,
n/k/a PROMARK CONSOLIDATED UTILITY
LOCATORS, INC., a/k/a IOWA ONE CALL,
EMPLOYERS MUTUAL CASUALTY, and
COMMERCE AND INDUSTRY INSURANCE
COMPANY,**
        Respondents-Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


        Robin Lull-Gumbusky appeals the district court order denying her petition

for judicial review.    Promark cross-appeals the order requiring payment of

ongoing medical expenses.  **AFFIRMED.**

        Mark S. Soldat of Soldat, Parrish-Sams & Gustafson, P.L.C., West Des

Moines, for appellant/cross-appellee.

        Aaron T. Oliver of Hansen, McClintock & Riley, Des Moines, for

appellees/cross-appellants Promark.

        Jeffrey M. Margolin of Hopkins & Huebner, P.C., Des Moines, for appellee

Great Plains.

        Heard by Danilson, C.J., and Doyle and Bower, JJ.

**BOWER, J.**

In this appeal and cross-appeal we are to consider the district court's affirmance of the ruling of the workers' compensation commissioner concerning employee Robin Lull-Gumbusky (Robin). Robin claims (1) the district court erred by affirming the exclusion of the majority of her exhibits; and (2) the commissioner misapplied the review/reopening law, proximate cause laws, Iowa Code chapter 17A, Iowa Code section 85.34, and industrial disability principles. On cross-appeal, the employer, Promark Consolidated Utility Locators Inc., and Commerce and Industry Insurance Company (Promark), claim the district court erred in affirming the agency order to pay for Robin's low-back medical expenses, provide ongoing low-back treatment for the 2007 injury, and increase Robin's permanent partial disability (PPD) benefits by ten percent. We affirm.

## I.    BACKGROUND FACTS

Robin began working for Great Plains Communication (Great Plains) in February 1999 as a utility locator. Her primary duty was to locate and mark buried utility lines. This was a seasonal position, allowing her to collect unemployment during the winter months.

On November 27, 2002, while working, Robin drove through a "T-intersection" and into a ditch. She sustained a serious spine fracture, requiring fusion surgery and the installation of extensive supportive hardware. Robin had a "smooth post-op course" and was discharged on December 11, 2002.

On January 11, 2005, Robin entered into a settlement agreement with Great Plains for the 2002 injury. The settlement included approximately forty

weeks of temporary total disability/healing period (TTD/HP) benefits, thirty-five percent PPD benefits for 175 weeks, and an agreement for ongoing medical treatment. Robin continued to work as a utility locator from 2004 through part of 2007. During this time she continued to experience problems associated with her injury.

In March 2007, Great Plains's name changed to Promark Consolidated Utility Locators, Inc., as did its insurance carrier. Robin was hired by Promark as a utility locator without an interruption in her normal work schedule. On August 2, 2007, Robin sustained another work-related injury. While descending a ditch, she slipped and landed on her back before slipping again and landing on her "rump, where it pushed, jarred everything up." A few months after this incident, Robin quit her job as a utility locator. Claiming her symptoms and pain increased due to the second injury, she filed a review-reopening petition against Great Plains and its insurance carrier Employer's Mutual Casualty, and a workers' compensation claim against Promark and its insurance carrier Commerce & Industry Insurance Company.

In her review-reopening petition, Robin claimed the condition caused by the 2007 accident warranted an increase in compensation from the 2005 settlement agreement. In her original notice and petition against Promark for the 2007 injury, she also asked for a determination concerning the extent of the injury, plus credit/interest, Iowa Code section 85.27 expenses and benefits, penalties and costs.

## II. PREVIOUS PROCEEDINGS

The deputy workers' compensation commissioner (deputy) held contested arbitration proceedings on March 28, 2011. At the hearing the files for Great Plains and Promark were consolidated. As a preliminary issue, the deputy commissioner noted Robin's medical records in "Exhibit I" did not conform to the format required by the hearing assignment order. The records were organized in chronological order, rather than chronological order by provider. The deputy was aware Robin's attorney, Mark Soldat, had been warned on multiple occasions about presenting exhibits in violation of the rule. The deputy told Soldat his noncompliance would lead to the exclusion of the exhibits. Soldat claimed the hearing assignment order "wasn't adopted by a rule in any case," and strict chronology provides a better understanding of medical treatment. The deputy rejected the argument and excluded Exhibit I. Though, the deputy did accept one report authored by Dr. John Kuhnlein, which was included in the exhibit.

Robin's husband Steve testified at the hearing. He described Robin's issues with ongoing pain since the 2002 accident. Her treating physician, Dr. Sufka-Boyd, recommended Robin see a chronic pain specialist; Kuhnlein made the same recommendation. Steve also described the issues Robin developed with anxiety while driving. He said the 2007 injury magnified her pain and anxiety, and ultimately made it impossible for Robin to do her job.

Robin also testified. She first described the enjoyment she had derived from her work. Then she described the 2002 injury and its lingering effects. The injury caused her to work slower to avoid re-injury. After her 2007 injury, Robin

noted her confidence decreased and her anxiety increased; she enjoyed her job but found driving to be scary. She now thought walking through ditches was dangerous, which she did not before the accident. After the 2007-2008 winter layoff, she worked in March and part of April before quitting. Robin felt she could no longer perform the job but managed to work several jobs following her utility locator position. She left those jobs for a variety of reasons. Robin testified she had not seen a psychiatrist since her first injury in 2002. After both injuries she continued to drive herself for work and worked normal hours. She testified the decision to quit was hers not a doctor's, and she did not talk to anyone at Great Plains or Promark before deciding to quit.

The deputy issued the review-reopening decision/arbitration decision on July 28, 2011. The deputy first noted Soldat failed to organize the exhibits, and since he had violated similar orders in the past, excluded those exhibits. The deputy found Robin sustained a work injury on November 27, 2002, and her claim for workers' compensation was settled by agreement on January 11, 2005. Pursuant to the agreement, Robin was entitled to PPD benefits equal to thirty-five percent of the body as a whole. The deputy also found Robin had been evaluated by Kuhnlein following the 2002 injury, and Kuhnlein assigned her a twenty-eight percent impairment of the whole person. Kuhnlein did not rate her mental health as it could not be quantified for an impairment rating.

The deputy found Robin continued to have pain after the 2002 injury into 2007 when she suffered the second accident. After Robin fell into the ditch, she worked the rest of her shift and reported to the emergency room. She took the

following day off (Friday), and returned to work on Monday. Robin sought no further medical treatment for the remainder of her seven weeks with Promark. She then underwent physical therapy and pain management assistance from a pain specialist. These treatments helped Robin's symptoms improve.

The deputy also found Robin saw Kuhnlein again in 2010. In his report, Kuhnlein opined her impairment rating, related to her 2002 injury, was the same as he found previously. The deputy found Kuhnlein attributed an additional three percent whole person impairment to Robin's injuries from the 2007 accident. After reviewing the evidence, the deputy found Robin's neck pain was not related to her 2007 injury as there was little mention of the pain before her fall in 2009. The deputy also found the numbness in her hands could not be attributed to the 2002 or 2007 injuries. Finally the deputy found Kuhnlein's report persuasive, but found Robin lacked credibility due to false answers given under oath concerning her prior substance abuse.

After reviewing Robin's claim for PPD benefits, the deputy found there was no observable physical change relating to the second injury, and the impairment rating was based on a subjective report. The deputy denied Robin's claim for PPD benefits relating to the 2007 incident. The deputy found there had been no impairment rating provided by an employer-retained physician, and denied Robin's claim for reimbursement for Kuhnlein's costs. Robin's claim for rehabilitation benefits was also denied. The deputy found Robin was entitled to a lifetime of reasonable medical care for the 2002 injury. Her ongoing care remained the responsibility of Great Plains. The deputy found care had been

abandoned, and Robin's medical expenses for Sufka-Boyd should be paid or reimbursed by Great Plains. The costs in both claims were taxed to Great Plains. Robin and Great Plains appealed to the commissioner.

After conducting a de novo review of the record, the commissioner concluded the deputy did not abuse his discretion in excluding the evidence for being improperly submitted. The commissioner concluded, as no offer of proof was made regarding the evidence, Robin failed to preserve error on the exclusion of her exhibits. The commissioner struck all portions of Robin's brief discussing evidence not contained in the record.

The commissioner found Robin failed to carry her burden on the review/reopening petition. He also found Great Plains did not obtain a new Iowa Code section 85.39 evaluation of Robin, and Kuhnlein's costs could not be taxed to Great Plains. The commissioner affirmed the deputy's denial of Robin's rehabilitation benefits, ruling she did not establish the requisite inability to return to gainful employment.

Relying on Kuhnlein's report, the commissioner found, Robin had established a three percent permanent impairment to the body as a whole as a result of the 2007 injury. Relying on evidence of her increased medication use, Steve Gumbusky's testimony, a medical opinion Robin could not continue working as a utility locator, and Kuhnlein's report of an increased permanent impairment, the commissioner concluded Robin had shown by a preponderance of the evidence she sustained a permanent compensable work injury to her lumbar spine in August 2007. The commissioner found Robin was entitled to an

additional ten percent PPD benefits, attributable to Promark, and one day of healing period benefits. The commissioner determined Robin's weekly rate for benefits, from the 2007 injury, was $463.10.

The commissioner concluded no employee-retained physician offered an impairment rating of Robin's injury, and denied her claim for reimbursement of Kuhnlein's costs from the 2007 injury. The commissioner also denied her claim for rehabilitation as she returned to the same job after her injury. The commissioner concluded Robin was entitled to lifetime reasonable medical care from Great Plains for pain in her ribcage plus any needed mental health treatment causally related to the 2002 incident. The commissioner also concluded Robin was entitled to ongoing and future medical care relating to her lower back from Promark, as directed by Sufka-Boyd.

Great Plains and Robin each requested rehearing. The commissioner clarified the taxing of costs against each defendant. The commissioner also noted the costs of Kuhnlein's examinations and reports were not taxed to either defendant. He referred the parties to Iowa Code section 85.32 regarding the date for the commencement of benefits, and instructed the parties to work towards agreement on the amount of interest due. Finally, the commissioner explained which expenses were the responsibility of Great Plains and which were the responsibility of Promark.

Robin petitioned and Promark cross-petitioned for judicial review. Great Plains did not file a cross-appeal.

The district court affirmed the commissioner's ruling in all respects other than a modification to the parties' future medical obligations. The district court modified the commissioner's ruling:

> In the Appeal Decision, the Commissioner discussed the applicable law regarding medical benefits as provided in Iowa Code section 85.27. The Commissioner discussed the law regarding an award of alternate medical care. As the Commissioner discussed law regarding an award of alternate medical care, and awarded Robin medical care controlled by Dr. Sufka-Boyd, the court concludes the Commissioner intended to award alternate medical care to Robin to ensure her continued treatment. The court therefore modifies the Appeal Decision to explicitly provide alternate medical care for her August 2007 injury from Promark/Commerce & Industry. *See* Iowa Code § 17A 19(10) (providing "The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief if it determines that substantial rights of the person seeking judicial relief have been prejudiced . . . ."). The court otherwise finds that the Commissioner committed no error in ordering Promark/Commerce & Industry responsible for ongoing and future medical care for Robin's low back symptoms and injury, and affirms the Appeal Decision on this issue.
>
> Regarding the Commissioner's order pertaining to ongoing and future medical care of Robin's issues originally addressed in the settlement following the 2002 injury, the court finds the Commissioner erred in limiting Robin's ongoing and future medical care provided by Great Plains/EMC to only Robin's rib cage and mental health. The court finds that the settlement agreement covered all of Robin's ongoing and future medical care causally related to the 2002 accident, and the Commissioner unnecessarily limited care relating to the 2002 injury in the Appeal Decision. Therefore, the court modifies the Appeal Decision. *See* Iowa Code §17A19(10). Great Plains/EMC shall be responsible for all of Robin's ongoing and future medical care causally related to the 2002 accident, except that the ongoing and future medical care for Robin's low back injury and increased low back pain relating to the 2007 injury shall be the responsibility of Promark/Commerce & Industry.

From this ruling, Robin appeals, Promark cross-appeals, and Great Plains does not appeal.

## III.   STANDARDS OF REVIEW

Our review is governed by Iowa Code chapter 17A (2013).  *See Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014).  Under chapter 17A, the district court acts in an appellate capacity to correct errors of law.  *Id.*  In reviewing the district court's decision, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court.  *Id.* at 889.  If we do, we affirm; if not, we reverse.  *Id.*  In reviewing agency action, the district court may only reverse or modify if the agency's decision is erroneous under one of the provisions set forth in Iowa Code section 17A.19(10) and a party's substantial rights have been prejudiced.  *Gits Mfg. v. Frank*, 855 N.W.2d 195, 197 (Iowa 2014).

We may reverse, modify, affirm, or remand the case to the commissioner for further proceedings if we conclude the agency's action is affected by an error at law or if it is not supported by substantial evidence.  Iowa Code § 17A.19(10); *Gits Mfg. Co.*, 855 N.W.2d at 197.  "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance."  Iowa Code § 17A.19(10)(f)(1).  Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion.  *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa

2007). Accordingly, the district court and the appellate court should not consider the evidence insubstantial merely because the court may draw different conclusions from the record. *Id.*

Robin's claims on appeal concern whether the commissioner correctly applied the law to the facts, and whether the commissioner correctly excluded evidence (questions of law and fact). Promark's claims on cross-appeal concern whether the commissioner ignored factual evidence and the language of the settlement, and whether the commissioner's decision was supported by substantial evidence (questions of fact).

> If the claim of error lies with the agency's findings of *fact,* the proper question on review is whether substantial evidence supports those findings of fact. If the findings of fact are not challenged, but the claim of error lies with the agency's interpretation of the *law,* the question on review is whether the agency's interpretation was erroneous, and we may substitute our interpretation for the agency's. *Clark* [*v. Vicorp Restaurants, Inc.*], 696 N.W.2d [596,] 604 [(Iowa 2005)] (citing Iowa Code § 17A.19 (10)(c), (11)(b)); *Mycogen Seeds [v. Sands]*, 686 N.W.2d [457,] 464 [(Iowa 2004)]. Still, if there is no challenge to the agency's findings of fact or interpretation of the law, but the claim of error lies with the *ultimate conclusion* reached, then the challenge is to the agency's application of the law to the facts, and the question on review is whether the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence. *See* Iowa Code § 17A.19 (10)(i), (j). In sum, when an agency decision on appeal involves mixed questions of law and fact, care must be taken to articulate the proper inquiry for review instead of lumping the fact, law, and application questions together within the umbrella of a substantial-evidence issue.

*Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006).

## IV. ANALYSIS

### A. Exclusion of Exhibit I

Robin claims the court erred by affirming the agency's exclusion of her Exhibit I due to her violation of the hearing assignment order.[1] We note the record shows the deputy commissioner had admonished Robin's attorney at several prior proceedings for submitting evidence in a manner the agency found "unhelpful and unwanted."  On review, the commissioner stated: "[t]he division and its professional staff have a workflow and internal practices which make the presentation of exhibits in a uniform manner a necessity.  The counsel's plea to do it his way due to his desire to 'build a better mousetrap' . . . is rejected."  The district court agreed with the commissioner's assessment.

We review the exclusion of Exhibit I for an abuse of discretion. *See Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595, 598 (Iowa 1997) ("The imposition of sanctions by administrative agencies is discretionary.").  This court shall reverse or grant other appropriate relief from agency action when that action is an abuse of discretion.  Iowa Code § 17A.19(10)(n).  An abuse of discretion occurs when the agency exercises its discretion on untenable grounds or its exercise of discretion was clearly erroneous.  *See IBP Inc., v. Al–Gharib*, 604 N.W.2d 621, 630 (Iowa 2000).  The agency has broad discretion in oversight and determinations about the admissibility of evidence.  *See Marovec v. PMX Industries*, 693 N.W.2d 779, 786 (Iowa 2005).

---

[1] Promark and Great Plains claim Robin did not preserve error on the exclusion of her exhibits.  For the purposes of this appeal, we will assume Robin preserved error for this issue.

Iowa Administrative rule 876-4.36 permits the commissioner to sanction a party for noncompliance with a rule or order:

> If any party to a contested case or an attorney representing such party shall fail to comply with these rules or any order of a deputy commissioner or the workers' compensation commissioner, the deputy commissioner or workers' compensation commissioner may impose sanctions which may include dismissing the action without prejudice, excluding or limiting evidence, assessing costs or expenses, and closing the record in whole or in part to further activity by the party.

As stated by our supreme court, "It is of no concern to a court reviewing an administrative sanction whether a different sanction would be more appropriate or whether a less extensive sanction would have sufficed; such matters are the province of the agency." *Marovec*, 693 N.W.2d at 786. We agree and find the exclusion of Robin's Exhibit I was not an abuse of discretion by the agency. Consequently, we shall not consider the materials excluded by the commissioner, even though Robin extensively cites the excluded material in her brief.

## B. Review/Reopening

Robin claims the district court erred by affirming the commissioner's failure to award PPD. Her claim focuses on her perception the commissioner misapplied the law to the facts. Courts will not reverse that application unless it is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). Robin's claim appears to focus on error's made in the agency's findings of fact. We review an agency's fact finding to determine if substantial evidence supports the decision. *Meyer*, 710 N.W.2d at 219. "'Substantial evidence' means the quantity and quality of evidence that

would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(*l*).

For a compensable review-reopening claim, Robin has the burden, by a preponderance of the evidence, to prove her current condition is "proximately caused by the original injury." *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 392 (Iowa 2009) (citation omitted). "The commissioner must then evaluate 'the condition of the employee, which is found to exist subsequent to the date of the award being reviewed.' The commissioner is not supposed to 're-determine the condition of the employee which was adjudicated by the former award.'" *Id.* at 391 (citations omitted). The change may be either economic or physical. *Blacksmith v. All-American Inc.*, 290 N.W.2d 348 (Iowa 1980); *Henderson v. Iies*, 96 N.W.2d 321 (Iowa 1959). The commissioner may adjust awards pursuant to Iowa Code section 86.14(2) by determining the employee's condition "warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon."

Robin claims she has an increased industrial disability due to worsening symptoms attributable to one or both incidents. The commissioner relied on Kuhnlein's findings to note she had no additional impairment related to the 2002 injury. Kuhnlein also noted Robin's mental health status had not changed substantially since he saw her in 2004. The commissioner stated Robin had not proved any economic or other related change resulting from the 2002 injury. The

commissioner found Robin failed to carry her burden of proof to establish a change in condition or entitlement to additional permanent partial disability benefits for the November 27, 2002 date of injury. The district court agreed. We find substantial evidence supports the commissioner's decision and affirm.

### C. Promark's Obligation to pay Low-back Expenses and Ongoing Treatment for the 2007 Injury; and Ten Percent PPD Award (Cross Appeal Issues I and II)

Promark claims the commissioner and district court ignored the factual evidence and controlling language from the settlement agreement by ordering Promark to pay for Robin's ongoing low-back treatment. Promark also claims the commissioner and district court erred in ordering Promark to pay ten percent PPD benefits. In its decision, the commissioner reasoned:

> Claimant asserts various medical difficulties subsequent to her work injury of August 2, 2007.
> . . . .
> As to claimant's prior medical complaints, Dr. Kuhnlein is in the unique position of having evaluated claimant both before and after her 2007 injury. As noted by the presiding deputy commissioner, his even-handed and measured evaluation is highly persuasive. Dr. Kuhnlein specifically identified that claimant sustained a three percent whole person functional impairment rating as a result of the 2007 work injury. Defendants' authorized surgeon, David Beck, M.D., similarly found that claimant sustained a permanent impairment and loss of function of one percent of the body as a whole as a result of the August 2, 2007 work injury. It is therefore concluded that claimant has established that she sustained additional permanent impairment as a direct and proximate result of her August 2, 2007 injury.
> It is further noted that Dr. Beck's impairment rating lacks any specificity as to how it was reached or under what provision of the AMA Guides it was assigned. Dr. Kuhnlein's assessment of a three percent permanent impairment rating attributable to the August 2, 2007 injury was delineated as being under the AMA Guides and the specific section of the Guides from which the rating could be derived was identified by Dr. Kuhnlein. It is therefore further concluded that Dr. Kuhnlein's assessment of an additional three

percent impairment to the body as a whole is accurate and the basis for further permanent partial disability.

Due to the conclusion that the medical evidence supports an award of permanent partial disability, the finding of the presiding deputy that claimant is not a credible witness must be considered. Even if claimant's self-interested account of ongoing pain levels is unreliable, this by no means implies that she has no pain or is not still entitled to medical care for alleviation of that pain. Indeed, her prescription usage increased significantly after the August 2, 2007 date of injury. I defer to the observations and credibility findings of the presiding deputy and concur that claimant's testimony is likely exaggerated as to the extent of her symptoms and residual abilities. Nevertheless, I find objective documentation of increased pain medication usage, namely Dr. Kuhnlein's persuasive opinion explaining claimant's increased medication usage and how she is now taking the maximum allowable dosage of Vicodin. It is concluded that this evidence, coupled with the testimony of claimant's husband, Steve Gumbusky, establishes that there has been a permanent increase in claimant's back symptoms as a direct result of the August 2, 2007 date of injury.

Having concluded that claimant has established an increased level of permanent functional impairment, it must also be determined whether this permanent impairment has resulted in further permanent disability. It is concluded that claimant quit her job at Great Plains at least partially as a result of her increased symptoms and anxiety about further injury. Although no physician has imposed specific permanent work restrictions upon claimant since the August 2, 2007 work injury, it must be noted that at least one treating physician has concluded claimant cannot continue to perform her work as a locator for Great Plains. Specifically, Joseph A. Brunkhorst, M.D., opined in a December 18, 2008 letter to the Social Security Administration that "I think it would be hard for her to continue that type of work." While recognizing the presiding deputy's concerns as to claimant's testimony and her potential exaggeration of her symptoms, the following conclusions are provided. It is concluded that claimant has not proven a substantial change of condition, or that she sustained any additional loss of future earning capacity as a result of the November 27, 2002 date of injury. However, given the increased permanent impairment, Dr. Kuhnlein's opinions about increased medication usage, and the opinions of Dr. Brunkhorst about claimant's ability to continue to work as a locator for the employer, it is also concluded that claimant has proven by a preponderance of the evidence that she sustained a compensable, permanent work injury as a result of the August 2, 2007 work injury. It is further concluded that claimant's injury resulting from the August 2, 2007 date of injury is limited to

her lumbar spine. Dr. Kuhnlein's opinions are accepted with respect to causation issues for any alleged injuries to the neck, shoulders or arms (carpal tunnel). Having considered numerous factors of industrial disability it is concluded that claimant presently has a permanent loss of earning capacity equal to forty-five percent as a result of the August 2, 2007 work injury.

While other conclusions could be drawn from the evidence in the record, we find the commissioner relied on substantial evidence in finding Robin was entitled to ongoing treatment for the 2007 injury. *See Arndt*, 728 N.W.2d at 393 ("Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion.").

## V. CONCLUSION

For the foregoing reasons, we find the commissioner did not abuse his discretion excluding Robin's improperly submitted exhibits. We find substantial evidence supports the commissioner's denial of Robin's review/reopening claim. We also find substantial evidence supports the commissioner's finding of an additional ten percent PPD and Promark's obligation for ongoing low-back expenses and treatment. Thus, we affirm the judgment of the district court.

**AFFIRMED.**