# IN THE SUPREME COURT OF IOWA

No. 13–0303

Filed March 7, 2014

**MIKE BROOKS, INC.,** and **GREAT WEST CASUALTY CO.,**

Appellants,

vs.

**JAMES DAVID HOUSE,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Christopher L. McDonald, Judge.

An employee seeks further review of a court of appeals decision reversing a district court ruling upholding the Iowa Workers' Compensation Commissioner's award of permanent total disability benefits for an employee's back injury. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Stephen W. Spencer and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, West Des Moines, for appellants.

Martin Ozga of Neifert, Byrne & Ozga, P.C., West Des Moines, for appellee.

**HECHT, Justice.**

The court of appeals concluded a workers' compensation award of permanent total disability benefits was not supported by sufficient medical evidence providing a causal link between the claimant's injury and his employment. Upon further review, we conclude the commissioner's factual finding on causation was supported by substantial evidence. We therefore vacate the decision of the court of appeals and affirm the district court ruling affirming the commissioner's award of permanent total disability benefits.

## I. Background Facts and Proceedings.

The following facts are supported by substantial evidence in the agency record. James David House is forty-eight years old and has had a career as a commercial truck driver. In 2002, he was involved in a motor vehicle accident resulting in injuries to his shoulder, neck, fibula, and cheek bone. In January 2004, while driving for C&C Distribution, House injured his neck again while trying to push a truck tire onto a rack. He underwent a cervical spine fusion and entered into a workers' compensation settlement of the 2004 injury claim based upon a 26.2 % industrial disability.

House began working as a commercial truck driver for Mike Brooks, Inc.,[1] on July 26, 2005. On March 7, 2007, House sustained a back injury when he slipped and fell in an icy parking lot while retrieving cargo. The safety director for Brooks directed House to have his injury evaluated by Lori Bailey, ARNP-FNPC. On March 14, Bailey noted House was experiencing pain at a "9 on a 0-10 pain scale," loss of sleep "due to the back discomfort," and an inability "to stand up straight secondary to

---

[1]For ease of reference, we shall refer in this opinion to Mike Brooks, Inc. and its workers' compensation carrier, Great West Casualty Company, as "Brooks."

the pain." Bailey initially diagnosed House's symptoms as "[l]ow back spasms," prescribed medications and physical therapy, ordered an MRI, and released House to return to work with certain restrictions. The MRI report "indicat[ed] a L4, L5 disc herniation with a protrusion of the disc material left paracentral extending to the margins of the nerve roots that exit at L5, L6 on the left." Based on these findings, Bailey recommended House discontinue physical therapy and referred him to Dr. David Hatfield, an orthopedic surgeon.

Dr. Hatfield evaluated House on April 6, 2007. At that time, House reported "pain in his back and down the right lower extremity" as a result of "a slip on the ice." Dr. Hatfield confirmed Bailey's diagnosis of muscle spasms and a disc protrusion at the L4–5 level, administered an epidural injection, prescribed physical therapy, and released House to return to work with significant restrictions.

On May 4, House again saw Dr. Hatfield who noted House's buttock and leg symptoms had dramatically improved but the pain and stiffness in his back had persisted. A second epidural injection scheduled for that day was postponed by Dr. Hatfield because House reported symptomatic improvement. Dr. Hatfield released House to return to work without restrictions, as House was very eager to get back to his full activities. On August 6, Dr. Hatfield opined House had achieved maximum medical improvement (MMI) as of May 4 and assigned a five percent permanent physical impairment rating as a consequence of House's March 7 injury.

House passed an Iowa Department of Transportation (IDOT) physical examination and returned to work. He continued to experience regular back pain after doing so. In early January 2008, House told his supervisors at Brooks that his back pain had become so severe it "was

tearing [him] up," and that he needed pain medications. House was again directed to see Bailey. While working in the course of his employment on January 4, House pushed open a heavy door and experienced an increase in pain and a burning sensation in the area of his March 7, 2007 back injury, which he described as feeling like "somebody stuck a red hot poker in [his] back."[2]

Bailey examined House again on January 16, 2008. Bailey gave House an injection that day for pain management, prescribed other medications, scheduled another MRI study, and referred House back to Dr. Hatfield. The new MRI report showed "[p]rogressing left paracentral and lateral disc protrusion at L4-5 disc space causing moderate spinal stenosis and encroachment of the non exited L5 nerve roots, left greater than the right from the previous exam of [March 22, 2007]."

On January 31, 2008, Dr. Hatfield performed a L4–5 bilateral discectomy on House. Following the discectomy, House reported persisting back pain and stiffness on three occasions to Dr. Hatfield in February and March. House was released to return to work and he passed another IDOT physical examination on April 1. The examination report noted House was experiencing "[i]ntermittent discomfort" and swelling at and near the incision cite. Still taking over-the-counter and prescription pain medications as needed, House returned to work, but he continued to experience severe pain in his back.

On April 23, Dr. Hatfield noted House complained of "significant pain in his right buttock and posterior aspect of his thigh to the level of approximately his knee," and "at the lumbosacral junction on the right." Dr. Hatfield ordered another MRI, prescribed pain medication, and

---

[2]The record does not reveal whether the January 4, 2008 incident predated House's report to supervisors that his back pain had become unmanageable.

advised House to cease working pending the results of the MRI. In November 2008, Dr. Hatfield performed surgeries to fuse the L5–S1 and L4–5 levels of House's spine. Concluding House attained MMI on July 22, 2009, Dr. Hatfield released him to work with permanent restrictions involving lifting, bending, and twisting, and limited House to "waist to shoulder level" work only. Dr. Hatfield opined House had sustained a physical impairment of twenty-three percent as a consequence of the work-related injury. House never returned to work for Brooks.

House filed a petition for workers' compensation benefits.[3] The evidence presented at the contested case hearing included the opinion of Dr. Kuhnlein who examined House and reported:

> I would agree with Dr. Hatfield that the changes were related to the March 7, 2007, incident. After recovery, Mr. House relates that he continued to have pain at work, with the subsequent incident while opening the door, *which would represent a sequela of the original injury*, as he did not have back pain before. *The March 7, 2007, injury was a substantial contributing factor to all of the back problems treated by Dr. Hatfield, up to and including the surgeries.*

(Emphasis added.) After the contested hearing, a deputy commissioner found House had sustained a permanent total disability. The deputy commissioner rejected Brooks' contention that the January 4, 2008 incident resulted in an injury distinct from the March 7, 2007 slip-and-fall injury. He also rejected Brooks' further contention that the March 7, 2007 slip-and-fall had not resulted in disability and that the disability resulting from the prior neck injury was greater than any disability

---

[3] Around the same time, House also filed a review-reopening petition in the proceeding against C&C Distribution. There he alleged that his cervical spine problems had worsened since the settlement in 2006. House received no additional workers' compensation benefits, however, as a consequence of this review-reopening proceeding. House made no claim that his cervical spine problems were related to his work at Brooks.

caused by the back injury.[4]  On intra-agency appeal, the commissioner affirmed the arbitration decision including the finding that House's injury and resulting permanent total disability were caused by the March 7, 2007 incident.  Brooks sought judicial review.

The district court found substantial evidence supported the agency's causation finding and affirmed the award of permanent total disability benefits.  Brooks appealed, and we transferred the case to the court of appeals.  The court of appeals concluded the commissioner's finding of causation was not supported by substantial evidence in the record.  The court of appeals noted "the causal connection [found by the commissioner between the March 7, 2007 injury and House's disability] was made by the experts with a lack of critical information" regarding the January 4, 2008 incident.  In particular, the court of appeals emphasized that neither Bailey's nor Dr. Hatfield's notes made reference to the 2008 incident.  Discounting Dr. Kuhnlein's opinion because it was "internally inconsistent"[5] and because it relied in part on the opinion of Dr. Hatfield who was not informed of the 2008 incident, the court of appeals further found "the sequence of events in this case" and the totality of the

---

[4]Brooks requested apportionment of any disability resulting from the 2004 and 2007 injuries under Iowa Code section 85.34(7)(*a*) in the arbitration proceeding.  As we affirm the district court's ruling affirming the commissioner's award of permanent total disability benefits, we do not consider the apportionment issue here.  *See Drake Univ. v. Davis*, 769 N.W.2d 176, 185 (Iowa 2009) (stating permanent total disability benefits are not subject to apportionment under section 85.34(7)).

[5] The court of appeals perceived an inconsistency between Dr. Kuhnlein's statement that House "relates that he continued to have pain at work, with the subsequent incident while opening the door," and the doctor's opinion that the door-opening incident was "a sequela of the original injury, as [House] did not have back pain before."  As we believe a reasonable fact finder could interpret the phrase "did not have back pain before" in this context as Dr. Kuhnlein's reference to the fact that House did not have a problem with back pain *prior to the 2007 injury*, we cannot conclude the commissioner erred as a matter of law in crediting Dr. Kuhnlein's opinion or in rejecting Brooks' theory of causation.

circumstances did not support the agency's conclusion. We granted House's application for further review.

## II. Scope of Review.

Iowa Code chapter 17A governs our review of the commissioner's decision. *See* Iowa Code § 86.26 (2009); *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013). The district court acts in an appellate capacity when reviewing the commissioner's decisions to correct errors of law. *See Watson*, 829 N.W.2d at 568; *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002). "On appeal, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. If we reach the same conclusions, we affirm; otherwise we may reverse." *Watson*, 829 N.W.2d at 568 (citation omitted).

The legislature has by a provision of law vested the commissioner with the discretion to make factual determinations. *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330–31 (Iowa 2005). Medical causation is a question of fact vested in the commissioner's discretion. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). We are bound by the commissioner's factual determinations if they are supported by "substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(*f*); *accord Watson*, 829 N.W.2d at 568; *Finch*, 700 N.W.2d at 331. Substantial evidence is

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Pease,*

807 N.W.2d at 845. On appeal, our task "is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made." *Id.*

### III. Discussion.

Our analysis is shaped largely by the deference we are statutorily obligated to afford the commissioner's findings of fact. Affording the appropriate deference here, we must conclude the district court correctly affirmed the agency's factual finding that House sustained a work-related injury and resulting disability on March 7, 2007. We are bound to uphold this factual finding on appeal, as it is supported by substantial evidence when the record is viewed as a whole. *See* Iowa Code § 17A.19(10)(*f*); *Watson*, 829 N.W.2d at 568.

House presented the opinions of two medical experts, each of whom concluded House's back injury and all subsequent treatment and surgeries were causally related to the slip-and-fall incident of March 7, 2007. On December 18, 2009, Dr. Hatfield, the surgeon to whom House had been referred by the nurse practitioner for Brooks, wrote: "Based on a review of my records I would relate [House's] lumbar changes and subsequent surgery to his 7 March 2007 incident as describe[d] in his records." As we have noted above, Dr. John D. Kuhnlein, who performed an independent medical examination of House on June 21, 2010, opined the door-opening incident in 2008 was a sequela of the 2007 injury.

"[T]he determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." *Pease*, 807 N.W.2d at 845 (quoting *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 464 (Iowa 1969)). The commissioner found the expert medical opinions of Dr. Hatfield and Dr. Kuhnlein convincing on the issue of

medical causation. Even assuming Dr. Hatfield was unaware of the 2008 door-opening incident, the commissioner could find on this record that Dr. Kuhnlein's opinion on causation was based on a thorough independent physical exam and review of House's medical and employment history including the 2008 door-opening incident. The commissioner considered all of the expert medical opinions "together with all other evidence introduced bearing on the causal connection between the injury and the disability." *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). The evidence includes Bailey's notes from January 16, 2008, which confirm House had experienced persistent low back pain "since his initial injury in March." In preoperative history and physical exam notes from January 29, 2008, Dr. Abeladro Cruz reported House's chief complaint was "[l]ow back pain since March 2007, [which had been] worse in the past 1 month." In addition, House testified he experienced pain every day following the March 7, 2007 injury and the sequence of events established by other record evidence amply supports this testimony. Brooks offered no other medical evidence tending to prove the January 4, 2008 incident was a distinct injury or a cause-in-fact of House's industrial disability. Accordingly, we conclude substantial evidence amply supports the causation finding actually made by the commissioner, and we are not at liberty to disturb it on the ground the evidence could support a different determination.

**IV. Conclusion.**

For the reasons stated above, we vacate the decision of the court of appeals and affirm the district court's decision affirming the Iowa Workers' Compensation Commissioner's award of permanent total disability benefits for House's back injury.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**