# IN THE COURT OF APPEALS OF IOWA

No. 14-1254
Filed July 9, 2015

**FIRST FLEET CORPORATION and
FIDELITY & GUARANTY INSURANCE
COMPANY,**
        Petitioners-Appellees

**vs.**

**WILLIAM HANNAM,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.

        A claimant appeals from the district court's ruling on judicial review that

reversed in part the workers' compensation commissioner's ruling and award of

benefits.   **REVERSED AND REMANDED WITH INSTRUCTIONS.**

        D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des

Moines, for appellant.

        Timothy W. Wegman and Joseph M. Barron of Peddicord, Wharton,

Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellees.

        Considered by Danilson, C.J., Potterfield, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DANILSON, C.J.**

Workers' compensation claimant, William Hannam, appeals from the district court ruling on a petition for judicial review that reversed in part the workers' compensation commissioner's ruling and award of benefits. Specifically, we consider whether the commissioner's findings regarding Hannam's shoulder injury, nervous system injury, and award of fifty percent industrial disability were supported by substantial evidence in the record when viewed as a whole such that the district court erred in reversing it.

Because we find substantial evidence in the record supports the commissioner's findings regarding Hannam's shoulder injury, nervous system injury, and the award of fifty percent industrial disability, we reverse the district court's ruling and remand with instructions to enter judgment affirming the commissioner's appeal decision.

**I. Background Facts and Proceedings.**

At the time of the arbitration hearing in January 2013, Hannam was sixty-six years old. He graduated from Albia High School in 1964 and served in the United States military from 1966-68 as a supply clerk before being honorably discharged. He attended the American Institute of Business and received training in court reporting in the 1970s. He worked in Missouri as a court reporter for a short time. When he returned to Iowa, he was unable to meet the state's proficiency requirements to become a licensed court reporter. Since that time, Hannam was primarily employed as a truck driver. He began working for First Fleet as an over-the-road truck driver on June 9, 2008.

The parties stipulated that on the date of injury—February 11, 2009—Hannam was employed by First Fleet and the injury arose in the course of employment. He was driving from Ames, Iowa, to Indianapolis, Indiana, to make a delivery when he stopped at a truck stop near Indianapolis. At the truck stop, a truck hit Hannam and ran over his legs. According to his hospital records, Hannam sustained a "displaced fracture of [the] proximal left fibula." He was hospitalized in Indiana from February 11–20, 2009, and was then moved to a rehabilitation facility until February 28, 2009. While still in the hospital, Hannam developed complications of blood clots and rhabdomyolysis severe enough that doctors told him he may not survive.

After he was allowed to return home to Iowa, Hannam continued to have trouble with swelling of his right leg and mobility issues. Due to the swelling in his right leg, he underwent surgery on April 1, 2009. A second surgery was performed on June 2, 2009, and a drainage tube was placed in his right leg.

Hannam returned to work as a truck driver with First Fleet on July 23, 2009. He remained in the position until March 27, 2010. He testified credibly that he left the position to work for Jacobson Trucking because he believed the job would be less physically demanding due to shorter routes. His salary at Jacobson was approximately two-thirds of his salary at First Fleet. Hannam worked for Jacobson for only one month because of continued pain. He then spent approximately six months unsuccessfully looking for work outside of the truck-driving field.

On November 1, 2010, Hannam took another position driving truck for Glory Bound Express where he earned approximately half of the salary he

earned working for First Fleet. Hannam kept the position for approximately three months before he quit due to injury-related pain. At the time of the arbitration hearing on August 6, 2013, Hannam had been unemployed since leaving Glory Bound Express on February 1, 2011.

On March 28, 2011, Joseph Creighton, D.O., performed an independent medical examination of Hannam. He opined that "Mr. Hannam's injuries and current debility are a direct result of the hit-and-run" and that Hannam had a three percent body as a whole impairment due to the right gait derangement, nineteen percent body as a whole impairment from loss of motion in the right hip, three percent body as a whole impairment for right trochanteric bursitis, and three percent body as a whole impairment for right upper extremity (right shoulder). Dr. Creighton imposed restrictions of minimal walking,[1] not lifting more than thirty pounds, and not lifting anything overhead.

In November 2012, Scott Neff, D.O., examined Hannam and reviewed his medical charts in order to provide an evaluation for First Fleet. Dr. Neff opined Hannam had sustained a one percent body as a whole impairment "as a result of skin change over the sensory distribution to the right lateral femoral cutaneous nerve." He found no other impairment and did not impose any work restrictions.

On November 16, 2012, Dr. Paul Conte provided First Fleet with a letter stating that he had treated Hannam from May 29, 2009, until May 13, 2010. Dr. Conte maintained Hannam had reached maximum medical improvement by May 19, 2010, and he had "a zero percent functional impairment rating based on the AMA guidelines 5th edition."

---

[1] Specifically, not walking more than one-quarter mile without rest.

An arbitration hearing was held on January 17, 2013. The parties stipulated that the commencement date for permanent partial disability was May 20, 2010. The deputy commissioner entered a written ruling on July 5, 2013, finding Hannam had suffered work-related injuries to his nervous system, hip, and shoulder that were unscheduled injuries. The deputy also found that Hannam had sustained a fifty percent industrial disability.

First Fleet appealed the arbitration decision to the Iowa Workers' Compensation Commissioner. The commissioner affirmed and adopted the arbitration decision on January 8, 2014.

First Fleet filed a petition for judicial review on March 21, 2014. First Fleet maintained the commissioner had "erred in finding [Hannam] met his burden of proof that he sustained an injury extending into the body as a whole and in awarding [Hannam] 50% industrial disability."

On July 17, 2014, the district court filed a ruling on petition for judicial review upholding the commissioner's finding that Hannam sustained a permanent hip injury that extended into the body as a whole. However, the district court concluded the commissioner's findings that Hannam suffered a work-related shoulder injury and a nervous system injury extending to the body as a whole were not supported by substantial evidence. The court also found that the commissioner did not provide enough analysis when awarding the fifty percent industrial disability for the court to properly review the award. The court remanded the case to the commissioner to "consider how this decision affects his determination of industrial disability, if at all."

Hannam appeals.

**II. Standard of Review.**

The district court considering a petition for judicial review acts in an appellate capacity and may reverse or modify an agency's decision if the agency's decision is erroneous under a section of the Act and a party's substantial rights have been prejudiced. Iowa Code § 17A.19(10) (2013).

"When dealing with the issue of whether substantial evidence supports the agency's findings, the district court and the appellate court can only grant relief to a party from the agency's decision if a determination of fact by the agency 'is not supported by substantial evidence in the record before the court when that record is viewed as a whole.'" *Gits Mfg. Co. v. Frank*, 855 N.W.2d 195, 197 (Iowa 2014) (quoting Iowa Code § 17A.19(10)(f)). Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion. "Just because the interpretation of the evidence is open to a fair difference of opinion does not mean the [agency's] decision is not supported by substantial evidence. An appellate court should not consider evidence insubstantial merely because the court may draw different conclusions from the record." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007). When we review a district court decision that reviewed an agency action, our task is to determine if it would reach the same result as the district court in applying the Act. *Gits Mfg.*, 855 N.W.2d at 197. If we reach the same result, we affirm; if not, we reverse. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014).

**III. Discussion.**

Hannam maintains the district court erred in reversing the agency decision because substantial evidence in the record when the record is viewed as a whole

supports the agency's findings that (1) Hannam's shoulder injury was related to the 2009 work injury, (2) Hannam's nervous system injury extended to his body as a whole, and (3) Hannam sustained a fifty percent industrial disability. *See* Iowa Code § 17A.19(10)(f).

**A. Shoulder Injury.**

The district court found there was not substantial evidence to support the commissioner's finding that Hannam's shoulder injury was causally related to the 2009 work injury.

"Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). "Medical causation is essentially within the domain of expert testimony." *Id.* at 845 (internal quotation marks omitted). "The commissioner is free to accept or reject an expert's opinion in whole or in part, particularly when relying on a conflicting expert opinion." *Id.* In their appellate capacity, courts "are not at liberty to accept contradictory opinions of other experts in order to reject the finding of the commissioner." *Id.*

Here, Dr. Creighton opined that "Mr. Hannam's injuries and current debility are a direct result of the hit-and-run" and determined Hannam had a three percent body as a whole impairment for right upper extremity (right shoulder). Although the other doctors did not reach the same conclusion as to causation, the commissioner implicitly found Dr. Creighton's independent medical examination to be the most credible. The district court maintained it was not questioning the credibility of Dr. Creighton, but rather concluded "this Court finds Dr. Creighton's opinion alone is factually insufficient to conclude that Hannam

suffered a right shoulder injury as a result of February 11 accident." However it is not the role of the court to reassess the evidence or make its own determination of the weight to be given the various pieces of evidence. *See Arndt,* 728 N.W.2d at 394 (stating it is not for the district court on judicial review to determine whether evidence "trumps" other evidence). It is the commissioner, as fact finder, who is responsible for determining the weight to be given expert testimony. *See Pease*, 807 N.W.2d at 845 ("Ultimately, however, the determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." (citation omitted)). It was not the role of the district court to re-weigh the evidence. The district court erred in concluding substantial evidence did not support the commissioner's finding that Hanna's shoulder injury was related to the work injury.

### B. Nervous System Injury.

The district court found that because the nerve injury was limited to Hannam's right leg, which is a scheduled member, that the nerve injury could not be unscheduled.[2] We disagree. The commissioner found Hannam had suffered "permanent impairment to the nervous system." Dr. Jacobson noted the crush injury with cutaneous nerve damage. Doctor Neff found injury to the lateral femoral cutaneous nerve qualified Hannam for a "1% whole person impairment." In *Collins v. Department of Human Services*, 529 N.W.2d 627, 629 (Iowa Ct. App. 1995), the claimant suffered a nervous system injury and the employer

---

[2] Specifically, Dr. Neff opined that Hannam's "skin change over the sensory distribution to the right lateral femoral cutaneous nerve in the right thigh" resulted in a one percent injury to the body as a whole. Dr. Neff clarified, "This nerve has no motor function, and 0% impairment can be attributed for motor function. This nerve does have sensory function, and this claimant qualified for a 1% whole person impairment . . . ."

maintained that because "her condition did not extend beyond her hands, . . . she suffered only a loss to a scheduled member." Relying on the supreme court ruling in *Barton v. Nevada Poultry Co.*, 110 N.W.2d 660 (Iowa 1961),[3] our court found that the claimant was entitled to compensation for industrial disability because "where an employee had an injury to a scheduled member and also to a part of the body not included in the schedule, the resultant permanent disability was compensable as an unscheduled disability." *Collins*, 529 N.W.2d at 629. The commissioner's determination that Hannam suffered nervous system injury compensable as an unscheduled disability is supported by substantial evidence, and the district court erred in ruling otherwise.

**C. Industrial Disability.**

The district court affirmed the commissioner's finding that Hannam suffered an unscheduled hip injury, but found that substantial evidence did not support the commissioner's finding that Hannam suffered an unscheduled work injury to his shoulder and nervous system. Consequently, the court remanded to the commissioner for reconsideration of the industrial disability award of fifty percent.

"[U]nscheduled injuries are compensated by determining the person's industrial disability." *Id.* Industrial disability is arrived at by determining the loss to the employee's earning capacity. *See Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). "The focus is not solely on what the worker can or cannot do; industrial disability rests on the ability of the worker to be gainfully

---

[3] *Barton*, 110 N.W.2d at 661 (finding a compensable systemic condition affecting the body as a whole "as a result of the blow to the right foot, a circulatory ailment, . . . affecting her entire nervous system").

employed." *Clark v. Vicorp Restaurants, Inc.,* 696 N.W.2d 596 (Iowa 2005). "A comparison of actual earnings before and after the injury is important to the earning capacity analysis*." Id.* at 605. Our case law requires that consideration be given to the injured employee's "age, education, qualifications, experience and his inability, because of the injury, to engage in employment for which he is fitted." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). There are no guidelines establishing the weight each of these factors are to be given in the commissioner's consideration; rather the commissioner must "draw upon prior experience and general and specialized knowledge to make a finding in regard to the degree of industrial disability." *Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 68 (Iowa Ct. App. 1991).

Hannam was sixty-two years old at the time of the work injury and sixty-six years old at the time of the arbitration hearing. He had primarily been employed as an over-the-road truck driver since his honorable discharge from the military in 1968. Although he had been trained as a court reporter in the 1970s, he was unable to pass the required proficiency test. After his injury, Hannam tried to find employment in other fields but was unsuccessful. When he took another job as a truck driver, he suffered an actual fifty percent loss in earnings. These considerations constitute substantial evidence to support the award of fifty percent industrial disability.

**IV. Conclusion.**

Because we find substantial evidence supports the commissioner's findings regarding Hannam's shoulder injury, nervous system injury, and the award of fifty percent industrial disability, we reverse the district court's ruling.

We remand with instructions to enter judgment affirming the commissioner's appeal decision.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**