# IN THE COURT OF APPEALS OF IOWA

No. 14-1347
Filed July 22, 2015

**PERRY LUTHERAN HOME and**
**FIRST COMP INSURANCE,**
 Petitioners-Appellants,

**vs.**

**CORINA COLEMAN,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

 An employer appeals a judicial review decision affirming the award of the workers' compensation commissioner. **AFFIRMED.**

 Sasha L. Monthei of Sheldrup Blades, Cedar Rapids, for appellants.

 Jean Mauss of Schott, Mauss & Associates, P.L.L.C., Des Moines, for appellee.

 Considered by Tabor, P.J., McDonald, J., and Goodhue, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**TABOR, P.J.**

A nursing facility and its insurer appeal from a judicial review order upholding a determination by the workers' compensation commissioner that a certified nursing assistant (CNA) suffered a permanent back injury during the course of her employment. That facility, Perry Lutheran Home, also challenges the commissioner's award of forty-five percent industrial disability to its employee, Corina Coleman. Because substantial evidence supports both conclusions by the commissioner, we affirm the judicial review order.

The injury at issue occurred on May 18, 2011. Coleman was "helping a gentleman to the restroom and back to bed." He started to fall and she caught him, resulting in Coleman suffering pain in her "lower back and going down [her] leg." Perry Lutheran maintains Coleman did not incur a permanent injury caused by her work activities. The employer argues: "Rather, the evidence demonstrates she suffered a lumbar muscular strain that resolved, or at most, experienced a temporary exacerbation of her pre-existing condition that returned to baseline within weeks of the incident." Coleman acknowledges a "pre-existing back condition" dating back to 1994. But she contends substantial evidence supports the commissioner's determination that the May 2011 work incident permanently aggravated her impairment. We agree with Coleman.

Coleman had a history of back problems before she began working as a CNA at Perry Lutheran Home in October 2008. She suffered a serious back injury in 2004 and underwent a nerve root block to provide pain relief. Relief was only temporary and eventually she was referred to neurosurgeon David Boarini.

Dr. Boarini did an MRI which revealed a small herniated disk. Dr. Boarini performed a L5-S1 hemilaminectomy and a disk excision. After further treatment, Dr. Boarini released Coleman to work in March 2006. Coleman passed a physical for employment as a CNA at Granger Nursing Home in February 2007.

The next year, Coleman switched to a similar position at Perry Lutheran. Her job required her to transfer, lift, turn, or move residents when they needed assistance. She worked forty to fifty-five hours per week. From 2008 until 2011, Coleman continued to experience back pain. A 2010 MRI revealed a central disk bulge but no other changes from the previous MRI. She was treated with pain medication, but continued her work without restrictions.

After the May 18, 2011 injury, Coleman experienced severe pain in her low back, different and escalated from the chronic pain she had managed before that date. She reported the injury to her supervisor and sought medical treatment on May 24. Coleman followed a family practitioner's recommendation she undergo physical therapy in June 2011. The physical therapist recommended "further diagnostics." A December 2011 MRI revealed a diffuse lumbar spondylosis demonstrating mild progression at several levels.

In March 2012, Coleman saw Dr. Charles Mooney, who noted she was having "nearly constant ongoing pain in her low back" which radiated down her left leg. Dr. Mooney placed lifting restrictions of twenty pounds with no repeat

lifting over ten pounds, along with no bending or twisting of the back.[1] Coleman was referred back to Dr. Boarini for a surgical evaluation in June 2012. He determined no surgery was necessary and recommended continued conservative care. Coleman received epidural injections and two medial branch blocks in October and November 2012. Dr. Clay Ransdell, who did the injections, reported little improvement in Coleman's condition.

On December 4, 2012, Coleman underwent an independent medical examination (IME) by occupational medicine specialist Sunil Bansal. After performing a physical examination, reviewing Coleman's medical history, symptoms, and job requirements, Dr. Bansal concluded Coleman had aggravated a pre-existing low back condition and that aggravation was permanent in nature. Dr. Bansal determined the impairment to be at thirteen percent of the body as a whole.

Perry Lutheran obtained an IME performed by Dr. Wampler. Dr. Wampler concluded Coleman had no permanent impairment and she had returned to her original baseline with no need for further treatment. Vocational specialist Lana Sellers did an assessment of Coleman's abilities using reports from Drs. Wampler and Mooney, but not referencing Dr. Bansal's views. Sellers believed Coleman was still employable as a CNA.

Following the agency hearing on Coleman's claim for compensation, the deputy commissioner found the existence of a permanent injury resulting from the May 18, 2011 incident. The deputy disbelieved Coleman's testimony that she

---

[1] Throughout this time, Coleman continued to work. First doing light work, then returning to her full CNA position. She continues to work in this position.

was pain free at the time of the disputed injury. But the deputy specifically credited Dr. Bansal's opinion: "I accept Dr. Bansal's causal connection opinions because they are supported and corroborated by other evidence and medical opinions in this record." By contrast, the deputy gave no weight to Dr. Wampler's opinion because he had not interviewed or personally examined Coleman. The deputy found the resulting permanent injury resulted in forty-five percent impairment in earning capacity due to the lifting restrictions.

The commissioner adopted the deputy's findings, reasoning as follows:

> The presiding deputy acknowledged that the claimant had existing back pain that lingered after the 2005 surgery and was likely greater than the claimant characterized during the testimony at hearing. However that the claimant continued to work without restrictions and performed all the duties as a certified nurse's assistant as required by the defendant employer outweighed claimant's exaggerations and her preexisting diagnosis and symptoms. There was substantial evidence to support the deputy's decision.

Perry Lutheran sought judicial review and the district court affirmed the commissioner's decision. Perry Lutheran now appeals, claiming substantial evidence does not support the finding of a permanent injury or an industrial disability of forty-five percent.

Under Iowa Code chapter 17A, the district court acts in an appellate capacity to correct legal error. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). Our review of final agency action is "severely circumscribed." *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 839 (Iowa 2002). Judgment calls are within the domain of the agency, not the courts. *Id.*

In workers' compensation proceedings, it is the commissioner, not the court, who weighs the evidence and measures the credibility of witnesses. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). The commissioner must determine "whether to accept or reject an expert opinion," as well as the weight to give the expert testimony. *Id.* Because these determinations remain within the "peculiar province" of the commissioner, we cannot reassess the weight of the evidence on appeal. *Id.*

"We are bound by the commissioner's factual determinations if they are supported by substantial evidence in the record before the court when that record is viewed as a whole." *Mike Brooks, Inc.*, 843 N.W.2d at 889 (citation and internal quotation marks omitted). "Substantial evidence" is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1) (2013). "On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc.*, 843 N.W.2d at 889 (quoting *Pease*, 807 N.W.2d at 845).

Substantial evidence supports the agency's finding that Dr. Bansal's opinion was entitled to more weight than the view of Dr. Wampler. The deputy explained how he reached his determinations that Dr. Bansal's assessment carried the day. We also conclude the commissioner's industrial disability

determination is supported by the substantial evidence. Coleman is in her late forties, graduated from high school and earned a CNA degree. Her most relevant work history is caring for residents at nursing facilities. The deputy highlighted the lifting restrictions that would limit Coleman's ability to obtain new employment as a CNA. Nothing in either of these rulings is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 526 (Iowa 2012).

After reviewing the parties' briefs, the agency record, and district court ruling, we find further discussion of the issues is unnecessary. *See* Iowa Ct. R. 21.26(1)(b), (d), and (e). Accordingly, we affirm the judicial review ruling upholding the commissioner's decision.

**AFFIRMED.**