# IN THE COURT OF APPEALS OF IOWA

No. 16-0104
Filed October 26, 2016

**ALIJA SARACEVIC,**
         Plaintiff-Appellant,

**vs.**

**TYSON FRESH MEATS, INC.,**
         Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.

An employee seeks review of the ruling of the district court upholding a

workers' compensation decision in favor of the employer.  **AFFIRMED.**

Adnan Mahmutagic of Beecher, Field, Walker, Morris, Hoffman &

Johnson, P.C., Waterloo, for appellant.

Brian L. Yung of Klass Law Firm, L.L.P., Sioux City, for appellee.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

An employee seeks review of the ruling of the district court upholding a workers' compensation decision in favor of the employer. Affording the appropriate deference to the commissioner's determination of which expert opinions to accept, we affirm.

Alija Saracevic began working for Tyson Fresh Meat, Inc. in 2004. Her position required her to repeatedly shave various parts of hog carcasses (sometimes the hams, other times the ribs or the head) as they moved down an automated line. In February 2010, Saracevic—who is left-hand dominant—developed pain in her left shoulder, arm, and fingers. She obtained treatment through the employer's referral and was placed on work restrictions.

In May 2010, Saracevic had an MRI scan, which indicated calcific supraspinatus tendonitis. Work restrictions, physical therapy, and injections into her shoulder did not abate her pain. In August, surgery to excise calcification tendonitis was recommended but found to be non-work-related, though Dr. Thomas Gorsche opined "repetitive activity could exacerbate symptoms." Tyson denied liability for Saracevic's condition.

Saracevic proceeded with treatment on her own, and, in November, she was referred to orthopedic surgeon, Dr. Arnold Delbridge. On November 15, 2010, Saracevic met with Dr. Delbridge and demonstrated her job duties during this appointment, one aspect of which included movements at or above shoulder level. Dr. Delbridge performed surgery to remove the calcium deposit from Saracevic's left shoulder on December 9, and she was released to return to work with restrictions on June 6, 2011. Saracevic bid on several jobs and ultimately

returned to work at Tyson at a position resecting spinal cords, a job she performs with her right arm.

Saracevic filed a petition for permanent-partial workers' compensation benefits, alleging left shoulder and left carpal-tunnel injury due to repetitive work performed while at Tyson. She submitted a report from Dr. Delbridge, which states, in part:

> [Saracevic] had impingement syndrome of her shoulder and . . . her job at Tyson materially aggravated her degenerative calcified tendon to the point where she could not work and required surgical intervention. An exacerbation is opined by other physicians. An exacerbation is reversible; a material aggravation is not. My conclusion is that Alija Saracevic had a material aggravation of her shoulder as a result of her extremely repetitive work of shave hogs at Tyson. The injury required surgical intervention and rehabilitation and a modified work environment, but she is now, once again, working at Tyson.

Mary Jones, Tyson's nurse manager, testified she had observed workers performing the three stations of the "shave hogs" position Saracevic had performed. Jones testified that the hogs move on a line that remains at a static height and the worker moves to a higher or lower level when shaving various portions of the hog.

Tyson submitted reports by Dr. Gorsche and Dr. Neff. The report from Dr. Gorsche opined:

> In Ms. Saracevic's case, the calcium deposit that she has in her left shoulder is from an unknown cause. There is no etiology as to why this happens. It is associated with tendon degeneration though. In review of the job duty of Shave Hogs, Ms. Saracevic does not flex the shoulder past 45 degrees and there is less than 20 degrees of abduction in performing that job. Ms. Saracevic also by MRI had no evidence for an impingement syndrome and had a type 1 acromion. There is no mention in Dr. Delbridge's operative report that there was a degenerative acromioclavicular joint.

In summary, Ms. Saracevic has suffered from calcific tendinitis of the left shoulder. There is nothing in the medical literature to suggest this is secondary to repetitive motion. It can be associated with degenerative cuff tears, which Ms. Saracevic did not have. Calcific tendinitis can be aggravated with an impingement syndrome or degenerative changes of the AC joint, which Ms. Saracevic had neither of those. In my opinion, it can be aggravated with repetitive forward flexion above 90 degrees or abduction above 90 degrees. In review of the DVD, Ms. Saracevic did not perform job duties that required that motion.

In my medical opinion based on a reasonable degree of medical certainty, Ms. Saracevic suffered from calcific tendinitis of the left shoulder, which was causing her shoulder pain but there is nothing to suggest it was related in any way to her job duties at Tyson nor aggravated by any job duties that she performed at Tyson.

In March 2012, Saracevic was examined by Dr. Neff at Tyson's request.

Dr. Neff's March 26 opinion was that "the left shoulder surgery performed by Dr. Delbridge was medically necessary but not specifically related to her work circumstance." On April 30, Dr. Neff wrote a letter to counsel for the employer stating:

> I have reviewed the video you provided which is entitled "job shave hams."
> The video depicts 2 different workers standing at the ham line as the carcasses pass in front of them. Each of them is using a fairly light razor device in the right hand to shave the hair from the ham area of the back legs of the carcasses.
> There is no significant force required. The activity is repetitious in an up-and-down motion. There is no depiction of activity anywhere near the elevation of the shoulder, and there is no activity depicted at or above the height of the shoulder.
> After reviewing this video the opinions contained in my original [independent medical examination] IME have been changed. Specifically, it is my opinion that the activity depicted in this video would not cause or materially aggravate an injury to the upper extremity.
> . . . After reviewing this video it is my opinion that this specific work activity did not contribute to the need for arthroscopy on this claimant's shoulder.

Following the evidentiary hearing, a deputy workers' compensation commissioner found,

> While the video viewed by Drs. Gorsche and Neff depicted only one portion of claimant's job, Ms. Jones testified the shaving line is ergonomically arranged so as to require similar movements in each of the three steps in the process. Claimant herself described the shaving line in a very similar manner to Ms. Jones. While the undersigned is troubled by only providing the physicians with video of one of three aspects of claimant's position, it is found that claimant failed to prove the remaining two aspects of the job varied so greatly as to render this evidence misleading and faulty.

The deputy determined that the opinions of Drs. Gorsche and Neff were entitled to more weight and concluded that Saracevic's shoulder condition was not work-related and, therefore, not compensable. The commissioner affirmed, as did the district court.

On appeal, Saracevic asserts the commissioner's application of law to fact was irrational, illogical, or wholly unjustifiable because the video mentioned by both Drs. Gorsche and Neff was misleading, and therefore their opinions were unreliable and should not have been entitled to more weight.

"On appeal, we apply the standards of [Iowa Code] chapter 17A [(2013)] to determine whether we reach the same conclusions as the district court. If we reach the same conclusions, we affirm; otherwise we may reverse." *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (citation omitted).

We are reminded that "[m]edical causation 'is essentially within the domain of expert testimony.'" *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011) (citation omitted). And, because the commissioner is the trier of fact with the duty to measure the credibility of the witnesses and to weigh the evidence, "the determination of whether to accept or reject an expert

opinion is within the 'peculiar province' of the commissioner." *Id.* (citation omitted). On review, it is our duty to determine if the commissioner's findings are supported by substantial evidence. Iowa Code § 17A.19(10)(f); *Mike Brooks, Inc.*, 843 N.W.2d at 889. "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Pease*, 807 N.W.2d at 845. "On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc.*, 843 N.W.2d at 889 (quoting *Pease*, 807 N.W.2d at 845).

Here, the commissioner adopted the findings and conclusions of the deputy, who addressed the concern about the video viewed by the experts. The commissioner found "the explanation provided by Dr. Gorsche of claimant's left shoulder condition and potential aggravating factors includes far greater detail than that provided by the other physicians." Moreover, "[a]lthough not as detailed as Dr. Gorsche's, the explanation offered by Dr. Neff is entirely consistent with that of Dr. Gorsche" and with medical literature, and both "reached the same causation opinion." The commissioner also explained that Dr. Delbridge's opinion was not supported by sufficient explanation. Although different conclusions could be drawn from the evidence, we conclude there is substantial evidence to support the commissioner's findings and we agree with the district court. Because the commissioner's findings are supported by substantial evidence and its conclusions were not irrational, illogical, or wholly unjustifiable, we affirm.

**AFFIRMED.**