# IN THE COURT OF APPEALS OF IOWA

No. 21-0855
Filed January 27, 2022

**ABF FREIGHT SYSTEM, INC. and ACE AMERICAN INSURANCE COMPANY,**
Plaintiff-Appellants,

**vs.**

**MARCUS HILLIARD,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

An employer and its insurer appeal a judicial review decision upholding the workers' compensation commissioner's award of additional benefits to Marcus Hilliard. **AFFIRMED.**

Stephen W. Spencer and Christopher S. Spencer of Peddicord Wharton, LLP, West Des Moines, for appellant.

Matthew J. Petrzelka of Petrzelka & Breitbach, P.L.C., Cedar Rapids, for appellee.

Considered by Schumacher, P.J., Ahlers, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCHUMACHER, Judge.**

An employer, ABF Freight Systems, Inc., and its insurer, Ace American Insurance Company, appeal a judicial review decision upholding the workers' compensation commissioner's award of additional benefits to Marcus Hilliard. Because the commissioner's finding of a change of condition is supported by substantial evidence and the determination of increased industrial disability is not irrational, illogical, or wholly unjustifiable, we affirm.

## I.    Background Facts

On August 8, 2013, Hilliard suffered an injury while working for ABF Freight Systems, Inc.[1] He eventually underwent cervical fusion in 2015. In July 2016, Hilliard was found to have sustained a permanent partial disability (PPD). He was awarded 150 weeks ($705.46 per week) in workers' compensation benefits for a thirty percent industrial disability. Hilliard was also awarded additional healing period benefits because of underpayment and penalty benefits for the employer's unreasonable delay in paying healing period benefits.

In January 2018, Hilliard filed a petition for review-reopening, asserting a change of physical condition since the previous award. A deputy commissioner found Hilliard's physical and mental condition had deteriorated since benefits were first determined. The deputy concluded:

> Based upon the evidence presented at hearing, I find that the claimant has proven he has a [fifty] percent loss of earning capacity resulting from his August 8, 2013, work injury. The extent of his disability was unknown at the time of the first injury as he was less than a year out from his cervical fusion surgery in May 2015. He was released by the treating surgeon with no medical restrictions and he did not attempt to return to work with the defendant employer.

---

[1] We refer to the employer and the insurer collectively as ABF.

Instead, Mr. Hilliard chose to manage the family farm. His activities on the family farm have changed significantly since the time of the first hearing, commensurate with the increased physical and mental symptoms he has suffered since then. Having found that Mr. Hilliard has suffered a [fifty] percent loss of earning capacity, I conclude he is entitled to an additional 100 weeks of [PPD] benefits commencing as of the date he filed his review-reopening petition.

ABF appealed to the workers' compensation commissioner, contending the deputy erred in finding Hilliard sustained a change of physical condition warranting review reopening. ABF also argued that if the additional benefits were upheld, the commencement date should be January 4, 2019. The commissioner upheld the deputy's review-reopening findings and concluded Hilliard was entitled to the additional PPD benefits. The commissioner agreed with ABF, however, that the commencement date should be January 4 because the original benefits ran through January 3.

ABF sought judicial review in the district court, which upheld the commissioner's ruling in its entirety. ABF appeals.

## II.    Scope and Standard of Review

On a petition for judicial review of a commissioner's decision, the district court acts in an appellate capacity to correct errors of law. *See Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). When the judicial review ruling is appealed, the appellate court applies the standards of Iowa Code chapter 17A (2018) to determine whether we reach the same conclusions as the district court. *See Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 390–91 (Iowa 2009). "If we reach the same conclusions, we affirm; otherwise we may reverse." *Mike Brooks, Inc.*, 843 N.W.2d at 889.

## III.    Discussion

*Change in condition since original award of benefits.* "The workers' compensation statutory scheme contemplates that future developments (post-award and post-settlement developments), including the worsening of a physical condition or a reduction in earning capacity, should be addressed in review-reopening proceedings." *Kohlhaas*, 777 N.W.2d at 392.  Our supreme court has explained:

> Under Iowa Code section 86.14(2), the workers' compensation commissioner is authorized to "reopen an award for payments or agreement for settlement . . . [to inquire] into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon."  When an employee seeks an increase in compensation, the employee bears the burden of establishing by a preponderance of the evidence that his or her current condition was "proximately caused by the original injury."  The commissioner must then evaluate "the condition of the employee, which is found to exist subsequent to the date of the award being reviewed."  The commissioner is not supposed to "re-determine the condition of the employee which was adjudicated by the former award."

*Id.* at 391 (alteration in original) (citations omitted).  To establish the claimant's current condition is "proximately caused by the original injury" a claimant may demonstrate what their physical or economic condition was at the time of the original award and then prove that there is a worsening of the claimant's physical or psychological condition, which warrants an increase in compensation.  *See id.* at 392–93.

Here, the deputy found Hilliard had met his burden:

> In order to apply the facts to the law, the two snapshots must be contrasted and compared.  The first snapshot was taken at the time of the first arbitration hearing in April 2016.  At that time, Mr. Hilliard had ceased working for the employer in this case.  He did not feel he could perform the work.  He has been renting out his family farmland

since 2013. He did not seek to return to work in any capacity and chose instead to manage the family farm. The restrictions recommended by Dr. Neiman were deemed to be inappropriate at that time. Mr. Hilliard was not taking any medications at that time other than ibuprofen. He had undergone significant cervical surgery in August 2015 with, what appeared to be, fairly good results. His treating surgeon placed no restrictions on him. He was under no active medical care and had no psychological diagnosis of any kind. He was actively helping with the custom farming operation at that time and helping with the cattle hauling.

The second snapshot was June 2019. At that time, the snapshot of Mr. Hilliard's condition was significantly different. He had been under active medical treatment by Dr. [Casey] Boyles since at least January 2018. He experienced significant weight gain and began treatment for pain with prescription medications, including Zanaflex, Cymbalta, and Neurontin. He had an MRI and an ESI. He underwent physical therapy. His treatments continued up through the date of hearing and he was referred to physical medicine. He was diagnosed with chronic pain, depression and anxiety. He testified credibly, corroborated by the treatment notes, that his pain worsened and included numbness and tingling in his hands and fingers. His depression significantly adversely impacts his condition. He has difficulty getting out of bed at times. He can no longer work for more than [thirty] minutes at a time.

ABF strenuously argues Hilliard did not meet his burden of showing he is entitled to an increase in compensation. ABF contends there has been no objective evidence of a change in Hilliard's physical condition and the commissioner improperly reevaluated Hilliard's impairment. The employer stresses no restrictions have been placed on Hilliard by his physician and points out Hilliard has income from his farming efforts.

To the extent ABF argues the review-reopening decision was unsupported by substantial evidence, we disagree. When reviewing an agency's findings of fact for substantial evidence,

The adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from

that finding as well as all of the relevant evidence in the record cited by any party that supports it.

Iowa Code § 17A.19(10)(f)(3). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1).

> Evidence is not insubstantial merely because different conclusions may be drawn from the evidence. To that end, evidence may be substantial even though we may have drawn a different conclusion as fact finder. Our task, therefore, is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made.

*Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (internal citations omitted).

Employing these standards, we find the commissioner's decision is supported by substantial evidence. We note counsel for ABF wrote to Dr. Boyles and asked, "[B]ased upon your evaluation and history from Mr. Hilliard, has his symptoms and physicia[l] condition deteriorated since his surgery by Dr. Abernathey [in 2015]?" Dr. Boyles responded:

> The answer to [your] question is yes. It is my medical opinion beyond a reasonable doubt that Mr. Hilliard has suffered a continuous decline since the date of his surgery. Postoperatively he has continued to suffer decreased range of motion of the cervical spine, chronic muscle spasms, and chronic pain that has resulted in significant depression, which I continue to treat to this date. I have most recently had the opportunity to examine Mr. Hilliard on February 8, 2019, which supports my opinion. On this date, we were able to discuss in detail his failure with physical therapy, limited and temporary improvement with injectable therapy through the pain clinic, and failed improvement after surgery. Essentially, he continues with chronic, debilitating pain, which affects every facet of

his life. At his last appointment [it] was my opinion that further evaluation by a physical medicine and rehabilitation physician may be the next option for pain relief. Otherwise, he may need to see a pain psychologist to help him deal with the psychological impact of his pain and psychological pain modulation methods.

Dr. Boyles's medical notes and testimony support his opinion of physical and mental-health deterioration. Dr. Boyles testified,

From a surgical standpoint, he's . . . not having as much radicular pain that he suffered from the bulging disks that were removed and after the spinal fusion. But, you know, the effects of the chronic spasm, chronic pain, has been problematic. It's affecting his entire life, his family.

Dr. Boyles also explained why he did not impose work restrictions on Hilliard: "They don't work. . . . In general, I don't impose them if—unless absolutely necessary."

The deputy found Hilliard's testimony credible. Hilliard was taking only over-the-counter pain medication at the time of the 2016 workers' compensation hearing. Since the original award of PPD benefits, Hilliard has experienced more severe pain and transitioned to several prescription medications for pain and depression. Hilliard testified he can engage in "very limited" physical activity, i.e., about half an hour, before needing a break. He relies on family members to complete the custom farm work, which provides his only income. Hilliard's wife testified about Hilliard's declining physical ability and participation in activities. She stated, "I would say his seventy-four-year-old father does more work and is capable of doing way more than [Hilliard] is." The deputy found her testimony "highly credible." The deputy findings were adopted and affirmed by the commissioner and there is substantial evidence to support the factual findings.

*Industrial Disability.* ABF also asserts Hilliard has not proven an increased industrial disability.

Whether Hilliard suffered additional industrial disability is a mixed question of law and fact. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). "[I]n considering findings of industrial disability, we recognize the commissioner is routinely called upon to make such assessments and has a special expertise in the area that is entitled to respect by a reviewing court." *Id.* at 527. When a party challenges the commissioner's application of law to facts, we will not reverse the commissioner's decision unless it is "irrational, illogical, or wholly unjustifiable." *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 857 (Iowa 2009).

> An employee who suffers a "permanent disability" is entitled to compensation. The amount of compensation for an unscheduled injury resulting in permanent partial disability is based on the employee's earning capacity. Earning capacity is determined by an evaluation of several factors, including "functional disability . . . age, education, qualifications, experience, and inability to engage in similar employment." Personal characteristics of the employee that affect employability may be considered. In determining industrial disability, the commissioner "is not required to fix disability with precise accuracy."

*Neal*, 814 N.W.2d at 526 (alteration in original) (internal citations omitted).

The deputy concluded that Hilliard had proven he had a fifty percent loss of earning capacity resulting from his August 8, 2013, work injury. The deputy further concluded that the extent of Hilliard's disability was unknown at the time of the first injury, as the claimant was less than a year out from his cervical fusion surgery in May 2015. The deputy noted that Hilliard was released by the treating surgeon with no medical restrictions and he did not attempt to return to work with ABF. Hilliard chose to manage the family farm. His activities on the family farm have

changed significantly since the time of the first hearing, commensurate with the increased physical and mental symptoms he has suffered since then.

The commissioner affirmed the deputy's finding (1) that Hilliard proved he sustained a physical change of condition regarding the work injury after the arbitration decision was filed, (2) that Hilliard is entitled to receive additional industrial disability benefits, and (3) that "as a result of the physical change of condition, claimant's industrial disability resulting from the work injury increased from [thirty] percent to [fifty] percent, which entitles claimant to receive 100 additional weeks of PPD benefits."

Hilliard was thirty-nine years old at the review-reopening. He has a high school education, no technical training beyond the high school level, and has farmed or driven types of trucks since he left high school. Hilliard suffered a neck injury while driving a forklift for ABF in 2013, had delayed corrective surgery in 2015, has experienced deteriorating physical and psychological conditions, and is only able to work for about thirty minutes before having to take a break. We cannot conclude the commissioner's determination that Hilliard has a fifty percent industrial disability is irrational, illogical, or wholly unjustifiable. We therefore affirm.

**AFFIRMED.**