# IN THE COURT OF APPEALS OF IOWA

No. 15-0629
Filed February 10, 2016

**POLARIS INDUSTRIES, INC.,**
        Petitioner-Appellee/Cross-Appellant,

**vs.**

**DOUGLAS HESBY,**
        Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A worker appeals a judicial review order on the issue of credit owed the employer for previous payments; the employer cross-appeals the determination of industrial disability. **AFFIRMED ON BOTH APPEALS.**

Harry W. Dahl of Harry W. Dahl, P.C, Des Moines, for appellant/cross-appellee.

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee/cross-appellant.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Claimant Douglas Hesby appeals from a judicial review order that remanded his case to the workers' compensation commissioner to decide if his employer, Polaris Industries, Inc., was entitled to credit for its payments for previous existing disabilities under Iowa Code section 85.34(7) (2013). Polaris cross-appeals the finding that Hesby sustained a thirty-percent loss in earning capacity following a July 2012 workplace fall injuring his left shoulder and hip. We affirm the district court on both challenges.

## I. Background Facts and Proceedings

Now in his late fifties, Hesby has worked in assembly and maintenance at Polaris in Spirit Lake since 1994 and plans to stay until he retires. He received one year of vocational training as a welder after high school but has no other degrees. His maintenance duties include climbing on tanks, changing oil and filters, and climbing onto the roof.

During his two decades at Polaris, Hesby has suffered a series of injuries. In 1999, Hesby injured his right shoulder at work, underwent surgery, received a six-percent impairment rating, and settled his workers' compensation claim. He returned to full-duty work. In 2007, he again injured his right shoulder when he fell on a patch of ice. After a time of light-duty work, he returned to his job without restrictions.

Hesby injured his right hip at work in 2009 and eventually underwent hip replacement surgery in 2010. Hesby filed a workers' compensation claim. Following a hearing in December 2011, the commissioner assigned Hesby a

twenty-percent impairment rating. The district court affirmed the commissioner's industrial disability award on October 15, 2013.

On July 28, 2012, Hesby slipped on a coffee-soaked rug at work and landed on his left shoulder and hip. He reported the injury and was treated by Polaris's in-house therapist. But he continued to work until October 28, 2012. After his injury failed to improve, Hesby went to see Dr. Keith Baumgarten on November 20, 2012. His examination revealed a torn rotator cuff and muscle atrophy in the left shoulder. Instead of surgery, Dr. Baumgarten recommended physical therapy and a subacromial-space injection; he placed Hesby on work restrictions. Polaris was unable to accommodate the restrictions, and Hesby received workers' compensation benefits for eight months.

Dr. Baumgarten's recommendations were not approved by Polaris's workers' compensation carrier,[1] and as a result, Hesby did not receive treatment for four months. In July 2013, Hesby saw Dr. Marc Hines, who found Hesby had a ten-percent whole-person impairment. Hesby had returned to work the previous month without restriction, but Dr. Hines assigned him a shoulder-lifting restriction of twenty pounds in September 2013. Hesby continues in the same maintenance job he had before the injury.

Hesby filed this workers' compensation claim, and a deputy commissioner held an arbitration hearing on October 31, 2013. In post hearing briefs, Polaris asked for credit for thirty weeks of permanent partial disability (PPD) benefits paid Hesby for his right shoulder claim and "any industrial disability benefits paid"

---

[1] During these proceedings, Polaris was self-insured, but the record indicates Sedgwick CMS was previously its insurance carrier.

for his prior hip claim. Hesby responded that Polaris was "not entitled to credit for the benefits paid, because both injuries are industrial." On January 28, 2014, the deputy issued an arbitration decision finding Hesby suffered a thirty-percent loss of earning capacity due to multiple tears in his left shoulder. The deputy also decided Polaris was not legally entitled to credit for prior payment of benefits under section 84.34(7)(b) and awarded Hesby one-hundred and fifty weeks of PPD benefits. Polaris filed an intra-agency appeal.

On August 12, 2014, the commissioner affirmed the deputy's ruling, but offered the following explanation for denying Polaris credit:

> While defendant asserts a prior payment to claimant for a 20 percent whole body impairment rating, review of the record of the case on appeal fails to establish any documentary evidence of the prior payment of 100 weeks of disability benefits as asserted. There is no letter establishing payment commencement or completion, a payment history log, or an agreement for settlement. The mere assertion of a prior payment cannot be found to be sufficient to grant a credit for prior payments. The credit, if one is to be awarded, need be proven by defendant by some documentation or other stipulation. Without proof of such prior payment, the credit cannot be awarded.

Polaris filed an application for rehearing on August 13, 2014. The employer contended the commissioner "incorrectly concluded that there was no evidence presented at the hearing as to any permanency benefits paid to Hesby on account of his previously alleged work injuries at Polaris." Polaris recounted that before Hesby's 2012 injury, he sustained a 1999 shoulder injury and a 2009 hip injury. The employer asserted that at the time of the October 31, 2013 arbitration hearing, 1) Hesby had been paid thirty weeks of PPD benefits for the

1999 shoulder injury, and 2) Hesby had not yet been paid PPD benefits for the 2009 hip injury because "this claim was still on appeal."[2]

Polaris noted that during the October 2013 arbitration hearing, it submitted into evidence the hearing transcript from Hesby's prior arbitration hearing concerning his 2009 work injury, during which Hesby stipulated on the record he had been previously paid thirty weeks of PPD benefits for a prior shoulder claim. Further, Polaris asserted that while testifying at the October 2013 arbitration hearing, Hesby acknowledged he had been paid thirty weeks of PPD benefits as a result of his prior shoulder claim.

Hesby filed a resistance to the rehearing application. Hesby did not deny receiving thirty weeks of benefit payments for the 1999 shoulder injury, but argued Polaris received credit for those payments when it paid the award for the 2009 hip injury. Hesby argued Polaris would not be entitled to take the thirty-week credit a second time because that "would constitute a double reduction."

When the commissioner took no action on the rehearing application, Polaris sought judicial review. On October 20, 2014, Polaris filed an application in the district court for leave to present additional evidence of "the seventy weeks of PPD benefits paid to Hesby after the arbitration hearing in this matter." The district court issued an order denying the application on October 30, 2014.

---

[2] Polaris cited *Hesby v. Polaris Ind., Inc.*, File No. 5035340, Arb. Dec'n (March 26, 2012); aff'm on appeal (April 17, 2013); aff'm on judicial review (October 15, 2013). Polaris asserted that it elected not to appeal the judicial review order in the hip-injury case and "paid out the award (100 weeks PPD less the 30 weeks credit for PPD previously paid)" after the October 31, 2013 arbitration hearing in the present case.

Polaris filed an offer of proof and renewed its request to present additional evidence on January 8, 2015.

In ruling on the petition for judicial review, the district court affirmed the commissioner's determination of thirty-percent industrial disability but reversed the commissioner's denial of Polaris's request for credit for past payments. The court explained:

> On judicial review, Polaris points out that Hesby admitted to receiving past payments for thirty weeks during arbitration hearings, the transcripts of which were part of the record in this case. . . . Based on this evidence in the record, the court concludes that substantial evidence does not support the Commissioner's finding that there was no evidence in the record to support the claimed credit by Polaris. The evidence cited by Polaris provides an admission, under oath, of the receipt of thirty weeks of credit from a prior work injury. No neutral, detached, or reasonable person would find that no evidence existed in the record when faced with the evidence cited above by Polaris.
> See Iowa Code § 17A.19(10)(f)(1).

The district court also considered Polaris's renewed request to present additional evidence. The court concluded:

> [T]he additional evidence of payments made to Hesby by Polaris is material, and that good reasons exist for Polaris's failure to present that evidence at the contested case hearing before the Deputy. This evidence is material due to the possibility of either a double recovery or a double credit under Iowa Code section 85.34(7) relating to the award in the present case and the recent award in the hip-injury case. Good reason for the failure to enter this evidence also exists as the final judicial review ruling had not yet been filed at the time of the present case's arbitration hearing. The court also notes that Hesby is unlikely to be prejudiced by the entry of this evidence as Hesby was aware of the previous award and of possible credits, given the fact that credits under section 85.34(7) were also at issue in his previous workers' compensation case.

The district court remanded for an agency hearing where both sides could present further evidence on the credit issue. Hesby appeals the resolution of the

credit issue. Polaris cross-appeals the court's affirmation of the impairment award.

## II. Scope and Standards of Review

Our review of workers' compensation cases is governed by Iowa Code chapter 17A. *Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015). When deciding a judicial review petition, the district court acts in an appellate capacity. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). On appeal we apply chapter 17A standards to decide if we reach the same conclusions as the district court. *Id.* "If we reach the same conclusions, we affirm; otherwise we may reverse." *Id.*

One of the questions before us is the commissioner's evaluation of Hesby's industrial disability, which is "determined by an evaluation of the employee's earning capacity." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 852 (Iowa 2011). That issue raises a mixed question of law and fact. *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). The commissioner's industrial-disability determination involves the application of law to fact, which we will not overturn unless it is "irrational, illogical, or wholly unjustifiable." *Id.* at 526; *accord Larson Mfg. Co., Inc. v. Thorson*, 763 N.W.2d 842, 856–57 (Iowa 2009).

The other question before us is the commissioner's rejection of the employer's request for credit under Iowa Code section 85.34(7). Our supreme court has determined the legislature has not vested the commissioner with the authority to interpret section 85.34(7). *See Roberts Dairy v. Billick*, 861 N.W.2d

814, 817 (Iowa 2015). Therefore, we review the commissioner's statutory interpretation "to correct errors of law on the part of the agency." *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 161 (Iowa 1987).

We are bound by the commissioner's findings of fact unless they are not supported by substantial evidence. *Warren Props.*, 864 N.W.2d at 311. The legislature defined substantial evidence as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). Our role is not to decide if the evidence before the commission supports a different finding; rather, our role is to decide if substantial evidence supports the commissioner's actual findings. *Mike Brooks, Inc.*, 843 N.W.2d at 889 (quoting *Pease*, 807 N.W.2d at 845).

We apply a different level of review where the commissioner fails to consider all of the evidence. *See JBS Swift & Co. v. Hedberg*, No. 14-0565, 2015 WL 162098, *5 (Iowa Ct. App. Jan. 14, 2015) ("The deference afforded the agency on substantial evidence review is predicated on the assumption the agency reviewed and considered the evidence in reaching its decision."). When the commissioner fails to consider all the evidence, the appropriate remedy is to remand for the commissioner to re-evaluate the evidence unless the facts are established as a matter of law. *Id.*

## III. Analysis

We are asked to decide two issues. First, Hesby claims the district court wrongly reversed the commissioner's determination that Polaris was not entitled to a credit for prior PPD payments. Second, Polaris claims the district court erred in affirming the commissioner's determination that Hesby sustained a thirty-percent industrial disability. We will address the issues in reverse order.

### A. Industrial Disability

Polaris argues Hesby did not suffer any industrial disability because he returned to his pre-injury job without restriction and his current earnings have not been affected. Hesby defends the commissioner's finding of thirty-percent impairment. He asserts he is unable to perform his duties without occasional assistance and is no longer able to perform full-time welding. Hesby points to his loss of strength and range of motion in his left shoulder. He also relies on the employability assessment performed by vocational consultant Barbara Laughlin. She concluded, as an "older worker" Hesby faced a difficulty if he had to compete in the job market and, due to his injuries and reduction in abilities, Hesby faced a "significant loss of directly transferable occupations."

The percentage of industrial disability measures the extent to which a work-related injury has impaired the employee's ability to earn wages. *Bearce v. FMC Corp.*, 465 N.W.2d 531, 535 (Iowa 1991). The focus of industrial disability is on the worker's ability to be employed, not on what the worker can or cannot do. *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 266 (Iowa 1995). In our

case, the commissioner found Hesby suffered a thirty-percent loss of earning capacity due to the injury he suffered on July 28, 2012.

The commissioner considers multiple factors in determining industrial disability, including "the employee's functional impairment, age, education, intelligence, work experience, qualifications, ability to engage in similar employment, and adaptability to retraining." *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 306 (Iowa 2005) (citing *Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999)). The agency weighed the pertinent factors:

> Douglas has a high school education. He received one year of vocational training as a welder. He previously worked for about a year as a full-time welder. Other past work involves building maintenance, industrial cleaning, warehouse work and his maintenance work at Polaris. Restrictions on his ability to use his shoulder for heavy, sustained work would greatly impact the type of jobs he has held in the past.
>    On the other hand, he has returned to his job without loss of pay. However, the impact of Dr. Hines' restrictions are not fully known at this time. The loss of his job at Polaris would be financially devastating to Douglas.

The agency also relied on Laughlin's assessment that Hesby had limited transferable occupations available to him.

Hesby was not required to prove an actual reduction in his earnings to establish a loss of earning capacity. *See Larson Mfg. Co.*, 763 N.W.2d at 856. The fact he was able to continue at his current maintenance job does not prove he suffered no industrial disability. *See id.* at 857. The agency properly considered the factors that bear on Hesby's employability and reached the conclusion Hesby lost thirty percent of his earning capacity as a result of his work

injury. We do not find the commissioner's ultimate resolution to be irrational, illogical, or wholly unjustifiable. Accordingly, we affirm on this issue.

**B. Credit**

Hesby challenges the district court's reversal of the commissioner's decision that Polaris was not entitled to a credit under Iowa Code section 85.34(7)(b)(1); stating:

> If an injured employee has a preexisting disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and the preexisting disability was compensable under the same paragraph of subsection 2 as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employee's condition immediately prior to the first injury. In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.

Hesby contends substantial evidence supported the commissioner's conclusion Polaris "did not meet its burden of establishing entitlement to a credit."

Polaris defends the district court's grant of its petition to review the commissioner's refusal to calculate a credit for prior PPD benefits Polaris paid to Hesby for previous injuries under section 85.34(2)(u). Like the district court, Polaris faults the commissioner for finding "no evidence" of prior payments in the agency record. Polaris contends it is entitled to credit for thirty weeks of PPD payments paid to Hesby for his 1999 shoulder injury and seventy weeks of PPD benefits for his 2009 hip injury.

The successive disability statute was recently discussed by the Iowa Supreme Court but only in the context of different employers. *See Warren*

*Props.*, 864 N.W.2d at 321 (analyzing method of apportionment under section 85.34(7)(a) for concurrent employers); *Roberts Dairy*, 861 N.W.2d at 822 (analyzing method of apportionment under section 85.34(7)(a) for successive employers). As Hesby notes in his brief, section 85.34(7)(b)(1) governs the availability of credit for disability benefits paid for a previous injury occurring with the same employer. In contrast to section 85.34(7)(a) dealing with different employers, the supreme court observed that section 85.34(7)(b)(1) "explains exactly how the offset is to be calculated when an employee suffers successive injuries while working for the same employer." *Roberts Dairy*, 861 N.W.2d at 822.

But the question in this appeal is not *how* to calculate an offset for Polaris; rather the question is *whether* Polaris presented sufficient evidence of its entitlement to an offset to justify a calculation. Hesby argues the district court erred in granting a remand on the credit issue because Polaris failed to provide documentation of its payments for the 1999 injury. Hesby also claims any payments for the 2009 hip injury should not be offset because they were made after the commissioner's decision in this case.

At the October 2013 arbitration hearing, counsel for Polaris asked Hesby if he was paid thirty weeks of benefits for his 1999 shoulder injury; Hesby responded: "[I]f that's what the record shows, yes." Polaris also offered as an exhibit a copy of a transcript from a December 2011 arbitration hearing where Hesby's attorney stipulated Polaris was "entitled to credit for thirty weeks of PPD paid for prior shoulder injury." The deputy commissioner acknowledged in the

arbitration decision that Hesby received thirty weeks of PPD payments. But in the agency appeal decision, the commissioner does not consider Hesby's testimony acknowledging receipt of thirty weeks of PPD payments for his 1999 shoulder injury or the exhibit from the prior arbitration hearing showing Hesby's stipulation to receiving those payments. The commissioner is not entitled to ignore record evidence. *See JBS Swift & Co.*, 2015 WL 991438, at * 5.

Given Hesby's admission during his testimony and the exhibit showing his prior stipulation, we agree with the district court that the commissioner's denial of any offset to Polaris based on a lack of documentation in the record was not supported by substantial evidence as required by section 17A.19(10)(f)(1). Further, we find a remand is necessary because the commissioner failed to consider relevant evidence concerning PPD payments for the 1999 shoulder injury. *See id.*

We also agree with the district court's decision to remand for a hearing to allow the presentation of additional evidence concerning Polaris's PPD payments for Hesby's 2009 hip injury.[3] Because of ongoing litigation, Polaris had not yet paid seventy weeks of PPD benefits for the hip injury at the time of arbitration hearing. The district court properly determined under Iowa Code section 17A.19(7) that Polaris had good cause for not presenting evidence of its payments at the arbitration hearing and evidence of the payments is material to

---

[3] Hesby argues for the first time on appeal that Polaris was required to present this additional evidence within twenty days of filing its notice of appeal to the commissioner. We do not find that this issue was preserved for our review.

determining the "extent of the percentage of disability for which the employee was previously compensated by the employer" under section 85.34(7)(b)(1).

Accordingly, we affirm the decision of the district court and remand to the commissioner for further proceedings.

**AFFIRMED ON BOTH APPEALS.**